578 A.2d 532

**CHURCHILL CORPORATION, Appellant,**

v.

**THIRD CENTURY, INC., A/K/A Chase Third Century Leasing Company, Inc., Appellee.**

**Benson FISHMAN, Individually and Transmedia, Inc., D/B/A Professional Marketing Advisors, Appellees,**

v.

**THIRD CENTURY, INC. A/K/A Chase Third Century Leasing Company, Inc., Appellant.**

Superior Court of Pennsylvania.

Argued April 19, 1990.

Filed Aug. 15, 1990.

316

John F. Peoples, Broomall, for Churchill Corp. and Fishman, et seq.

Michael Coughlin, Blue Bell, for Third Century, Inc.

Before CAVANAUGH, ROWLEY and HUDOCK, JJ.

CAVANAUGH, Judge:

This consolidated appeal involves two cases in which small Pennsylvania companies who had each leased a single office machine from Chase Third Century Leasing Co., Inc., a Missouri corporation doing business in Pennsylvania, sought to enjoin that company from bringing suits against them in a rural Missouri county. The Courts of Common Pleas in Philadelphia and Montgomery counties reached inconsistent decisions in these factually similar cases. After an extensive review of applicable Pennsylvania, Missouri, and federal law relating to jurisdiction and due process, choice of law, and the enforceability of forum selection clauses, we conclude that the Court of Common Pleas of Philadelphia County was correct in enjoining Third Century from pursuing its Missouri suit and that the Court of Common Pleas of Montgomery County erred in not doing the same. Therefore the injunction entered September 13, 1989 in the Philadelphia (No. 2676 Philadelphia 1989) case is affirmed and the March 8, 1989 denial of the injunction in the Montgomery County case (No. 961 Philadelphia 1989) is reversed and the case remanded with instructions.

The facts of each case are as follows. Plaintiff-appellant in the Montgomery County case is Churchill Corporation, a Pennsylvania corporation doing business within the state. Churchill entered into a contract with Chase Third Century. Churchill did not seek out Chase but rather was induced to

sign the lease through an office equipment dealer, Select Copy, which secured financing for a facsimile machine through Chase. Churchill used the facsimile machine owned and leased by Chase for a few months until it failed to operate properly. For some time after the machine ceased to function properly, Churchill continued to make payments but when the machine could not be fixed, Churchill ceased to make payments and Chase repossessed the machine. Thereafter, Chase sought to recover the remaining payments on the lease after giving Churchill a small credit.

Chase brought an action for $1,700.00, the sum total of the remaining payments under the lease minus the credit, in the Circuit Court of Randolph County, MO, pursuant to a boilerplate forum selection clause appearing on the reverse side of the lease. That clause stated that jurisdiction would be deemed proper in the Missouri courts and that venue would lie in the Circuit Court of Randolph County. In addition, the lease contained a choice-of-law provision stating that Missouri law would govern the contract and that the contract would be deemed executed in Missouri, regardless of where it was signed.[1]

It is not disputed that Churchill's president, who signed the lease, never read the forum selection clause and was unaware of its import. The court of Randolph County is located in Moberly, MO, which is sixty miles north of Jefferson City and is accessible only by automobile. Indisputably, it would have cost Churchill far more to defend against the Missouri suit due to the enormous transportation expenses than to have satisfied a default judgment against it. Churchill chose not to defend the suit, but instead brought an action in the Court of Common Pleas of Montgomery County to have Chase dissolve any judgment and dismiss the action. In the alternative, Churchill sought to restrain Chase from docketing a default judgment in the Court of Common Pleas of Montgomery County.

1. In both the Churchill and Transmedia cases, the leases were actually negotiated and executed in Pennsylvania.

On December 28, 1988, Churchill obtained a temporary restraining order signed by the Hon. Albert Suber. On January 6, 1989, the Hon. Paul Tressler presided over a hearing and overturned the temporary restraining order. By order entered March 8, 1989, the court refused to issue a preliminary injunction and dismissed the action with prejudice for lack of personal jurisdiction over the defendant Chase. Churchill filed this timely appeal.

In the Philadelphia County case, the defendant-appellant is Chase Third Century and appellees are Benson Fishman and Transmedia, Inc., doing business as Professional Marketing Advisors [collectively referred to as Transmedia]. Transmedia is a Pennsylvania corporation which conducts no business in the state of Missouri.

In June 1986, Chase and Transmedia entered into a lease for a Minolta copying machine. The machine delivered to Transmedia was in fact a Royal copier. Transmedia did not seek out Chase but rather leased the machine from Chase, for financing purposes, at the suggestion of the dealer of the machine, American Duplicating, Inc. As in the other case, the signatory, Mr. Fishman, never read the forum selection clause, which appeared on the back of the lease. (It should be noted that in both leases, the lessee's signature appears on the bottom of the front side of the lease; however, there is a notation on the front to see the reverse side for additional terms and conditions.)

The copier machine failed to operate properly. Investigation revealed that the serial number on the machine was not genuine and that the machine, though represented to be new, was actually used. Transmedia made twelve lease payments before it ceased to make further payments. Chase repossessed the machine and thereafter filed suit in the Circuit Court of Randolph County for the remaining payments on the lease. In its Missouri petition [equivalent to a complaint under Pennsylvania law], Chase did not set forth any credit due to Transmedia for the value of the repossessed machine.

After being served with the Missouri petition, Transmedia sought injunctive relief in the Court of Common Pleas of Philadelphia County. Chase filed a petition to remove the case to the U.S. District Court for the Eastern District of Pennsylvania; it was denied and the case remanded back to Philadelphia. Chase filed preliminary objections for lack of jurisdiction by reason of the forum selection clause contained in the lease. The court denied the preliminary objections and granted injunctive relief following a hearing on the matter. Chase has appealed from the injunction which prevents it from continuing prosecution of its suit in Randolph County.

In these cases, we must determine, first, whether the Pennsylvania courts have jurisdiction to hear these cases and, second, whether the granting of injunctive relief is proper under the circumstances. We must do so by reference to the appropriate law, since this case involves choice-of-law issues as well. Finally, constitutional considerations of due process must inform our decision since the fundamental question in this appeal is whether Churchill and Transmedia, by virtue of each having leased a single office machine, should be required to defend suits brought in Missouri, a forum with which neither has significant ties.

■ Chase argues that Pennsylvania courts do not have jurisdiction to hear these cases. It contends that the forum selection or "consent-to-jurisdiction" clause appearing in the form lease deprives any court except the Circuit Court of Randolph County of jurisdiction and venue to hear cases arising under the lease.

However, even if we momentarily assume the validity of the forum selection or consent-to-jurisdiction clause to create personal jurisdiction in the Missouri courts over Churchill and Transmedia, it does not necessarily follow that the clause operates to deprive Pennsylvania courts of jurisdiction as well. In *Central Contracting v. Youngdahl*, 418 Pa. 122, 209 A.2d 810 (1965), the Pennsylvania Supreme Court reviewed the law relating to contractual forum selection and found that it would be against public policy where

the parties are brought before a competent tribunal to allow an agreement made in advance of the dispute to oust the tribunal's jurisdiction.[2] *Also, In Rea's Appeal,* 13 W.N.C. 546 (1883); *Healy v. Eastern Building and Loan Association,* 17 Pa.Super. 385 (1901) (plaintiff's agreement to sue only in a New York county could not deprive Pennsylvania courts of their jurisdiction to hear the case). Therefore, the Court of Common Pleas of Montgomery County erred in finding that the lease deprived that court of its jurisdiction to hear the case.

Pennsylvania does have personal and subject matter jurisdiction over these disputes. Chase Third Century is a corporation doing business nationwide and licensed to do business in Pennsylvania. It negotiates and contracts to finance and lease office equipment to Pennsylvania companies and individuals for the purpose of realizing pecuniary benefit. Therefore, Chase is amenable to suit under the Pennsylvania long-arm statute, which appears at 42 Pa.C. S.A. § 5322. *See, McCrory Corp. v. Girard Rubber Corp.,* 459 Pa. 57, 327 A.2d 8 (1974).

The exercise of jurisdiction by Pennsylvania is also constitutional under federal law: Chase has purposefully availed itself of the privilege of conducting activities within the Commonwealth thus invoking the benefits and protections of its laws. *E.g., Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ Next, we must determine whether Pennsylvania should decline to exercise jurisdiction because of the forum selection clause. A Pennsylvania court should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation. *Youngdahl, supra.* An agreement is unreason-

2. *Youngdahl* also stands for the proposition that a court in which jurisdiction and venue are proper may nonetheless decline to adjudicate a cause of action when the parties have freely agreed that litigation shall be conducted in another forum, *provided* such agreement is not unreasonable at the time of litigation. 209 A.2d at 816. The application of this rule to the case at hand will be discussed *infra.*

able where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue its cause of action. *Id.* Mere inconvenience or additional expense is not the test of unreasonableness if the plaintiff received under the contract consideration for its agreement to litigate in a specified forum. *See,* id. *If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by its agreement.* Id. See also, Continental Bank v. Brodsky, *225 Pa.Super. 426, 311 A.2d 676 (1973) (forum selection or consent to jurisdiction by prior consent may be enforced when the parties have dealt on an equal basis and there is nothing unfair about their agreement).*

Applying these factors to the instant cases, we find that Pennsylvania should not decline to exercise jurisdiction. The requisites for the enforcement of the forum selection clause under the circumstances of these cases at the time of litigation are not present. Enforcement of forum selection under these leases would also offend notions of due process, *see infra,* and is therefore *per se* unreasonable.

First, we note that enforcement of these clauses would seriously impair Churchill's and Transmedia's ability to pursue their defenses. Where it is more expensive to defend a cause of action than to pay a default judgment solely because of the location in which the matter is being adjudicated, litigation in the foreign forum is no longer a matter of mere inconvenience or additional expense; rather it rises to the level of serious impairment of the parties' ability to defend against the action.

Second, there is absolutely no indication that Churchill or Transmedia received any consideration for agreeing to the forum selection clause. The testimony was uncontroverted that neither entity's representative read or was aware of the clause in question. The forum selection clause was simply not an aspect of the agreement for which the parties bargained. Moreover, the forum selection clause is unfair and arguably unconscionable as well.

Third, the "agreed upon" forum cannot do substantial justice because no resolution of the case in Missouri could compensate Churchill and Transmedia for the extraordinary expenses they will incur litigating in a forum to which they have virtually no connections whatsoever.

Having determined that the lower courts should have exercised jurisdiction to hear these cases, we must still determine whether the standards for preliminary injunctions have been met and whether the injunctions should issue. Churchill and Transmedia are requesting the injunctions based on the Missouri court's lack of jurisdiction to hear these cases, the unfairness and inconvenience of forcing Churchill and Transmedia to litigate in the foreign forum, and the immediate and irreparable harm which the parties will suffer if Chase is not enjoined from pursuing its actions in the Randolph County Circuit Court. Before we decide whether the standards for the issuance of a preliminary injunction against Chase have been met, we must address the underlying jurisdictional concerns.

We have already determined that Pennsylvania has jurisdiction over these cases. However, it must be borne in mind that these cases were initially filed in the Circuit Court of Randolph County. Normally, we would defer to the jurisdiction of our sister state where the cases were first filed. Nonetheless, Churchill and Transmedia argue that Missouri lacks jurisdiction and that they will be seriously prejudiced if the cases are allowed to proceed in that forum, where raising a defense would cost more than paying a subsequent default judgment.

The first issue, then, is whether the forum selection clauses, while not ousting Pennsylvania jurisdiction, have nonetheless conferred personal jurisdiction on the Missouri courts so that the actions, once having been brought there, should be heard there. We are of the opinion that Missouri lacks jurisdiction pursuant to the forum selection clause.

The parties have briefed the issue of whether this court should apply Missouri or Pennsylvania law to determine the validity of the forum selection clause in the lease. The

form lease contains a provision that Missouri law will govern the contract. Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum. 13 Pa.C.S.A. § 1105(a). Ordinarily the law chosen must be that of a jurisdiction where a significant enough portion of the making or performance of the contract is to occur or occurs. Uniform Commercial Code Comment, 1972.

We are not entirely certain that the choice-of-law provision in this contract is valid. The choice-of-law clause, like the forum selection clause, was not bargained-for by Churchill or Transmedia. Nor do the contracts, which were negotiated, signed and performed in Pennsylvania, bear a significant reasonable relation to Missouri.

However, it is not necessary for us to address the choice-of-law issue for two reasons. First, Churchill and Transmedia are amenable to the application of Missouri law. Presumably Chase is as well, since it was the party responsible for drafting the Missouri choice-of-law provision into the equipment leases. Also, Chase has cited certain Missouri cases on the subject in its brief. Second, our research discloses that Pennsylvania and Missouri law relating to the enforcement of forum selection clauses is very similar.

We have already discussed Pennsylvania law relating to contractual forum selection. Missouri courts have evinced the same reluctance to enforce these clauses where they are unfair or unreasonable.

As recently as 1981, Missouri appellate courts held that forum selection clauses were void as being against public policy. *State of Missouri ex. rel. Gooseneck Trailer Manufacturing Co., Inc. v. Barker*, 619 S.W.2d 928 (Mo.App. 1981). Although several decisions by federal district courts in Missouri and the Eighth Circuit Court of Appeals enforced forum selection clauses, these decisions explicitly relied on federal law, *see, e.g., Sun World Lines, Ltd. v. March Shipping Corp.*, 801 F.2d 1066 (8th Cir.1986), and are not binding upon Missouri courts as a matter of state law.

Since 1981, Missouri appellate decisions have allowed a party to consent to the jurisdiction of a given court provided the forum selection clause is not unfair or unreasonable and comports with applicable due process standards. *State ex rel. Marlo v. Hess,* 669 S.W.2d 291 (Mo.App.1984); *Chase Third Century Leasing v. Williams,* 782 S.W.2d 408 (Mo. App.1989). *A forum selection clause "could be unreasonable if it resulted in undue hardship, such as a necessity to travel or transport witnesses such a distance that expenses would render access to the courts impractical." Marlo, supra,* at 294. *Such a clause "could be unfair if imposed upon one not in a position to negotiate because of the superior bargaining power of the other party, as in the case of ... financial credit and small loan agreements or adhesion contracts." Id.* (Emphasis ours.)

■ It is undisputed that transportation and witness expenses for Churchill and Transmedia would render access to the Circuit Court of Randolph County impractical. It would simply cost less to pay the costs of a default judgment. Moreover, the contracts containing the clause are small loan financing agreements drawn up by a large and established company which possessed superior bargaining power and resources and, in effect, dictated the terms of the agreement by using a form lease. In contrast to the *Williams* case cited by Chase, Churchill and Transmedia presented specific evidence to support their allegations of unfairness and unreasonableness in the enforcement of the forum selection clause.

■ Having concluded that the forum selection clause could not confer jurisdiction on the Missouri court under either Missouri or Pennsylvania law, we turn to Chase's assertions that even absent the clause, Missouri courts have jurisdiction over Churchill and Transmedia by virtue of Missouri's long-arm statute. That statute appears at Mo. Rev.Stat. § 506.500 and confers jurisdiction over, *inter alia,* persons transacting any business within the state or making contracts within the state. Naturally, jurisdiction

must also comport with due process under the federal constitution.

Decisions by Missouri appellate courts are instructive. In *M & D Enterprises, Inc. v. Fournie*, 600 S.W.2d 64 (Mo. App.1980), the Missouri Court of Appeals determined that Missouri did not have jurisdiction over a Delaware corporation with its principal place of business in Illinois which had purchased certain material from a Missouri corporation. Through a series of telephone calls, Fournie ordered and agreed to pay for materials from M & D in Missouri for use in Illinois. The court decided that the telephone calls made from Illinois by agents of the Delaware corporation were not sufficient minimal contacts with Missouri to invoke jurisdiction under the Missouri long-arm statute. The court said:

> Fournie ... was a buyer, not a seller. It did not enter the state of Missouri or initiate a flow of commerce into Missouri. The flow of commerce was initiated by M & D.... To permit Missouri courts to have jurisdiction in this case would amount to an open invitation to Missouri residents to go into other states, solicit business as an aggressor, and then, as a practical defense to any claim asserted by a nonresident buyer that the product sold was defective, drag the buyer into Missouri courts, as a strategic counter-move, through the use of § 506.500. Such a practice would violate the traditional notions of fair play and substantial justice, as mandated by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]. We cannot believe that the legislature, in enacting § 506.500 intended that it would apply to the factual situation before us.

600 S.W.2d at 69.

*Scullin Steel Company v. National Railway Corp.*, 676 F.2d 309 (8th Cir.1982), a federal case which reviewed case law interpreting Missouri's long-arm statute, is virtually on all fours with the instant cases. In *Scullin*, an officer of Scullin, a Delaware corporation with its principal place of business in Missouri, went to Philadelphia to negotiate a

contract of sale with National Railway, a South Carolina corporation with its principal place of business in Pennsylvania. Scullin prepared the agreement and it was executed by National Railway in Philadelphia and by Scullin in Missouri. No National Railway employee visited Missouri in connection with negotiations or performance of the agreement. All payments were sent by National Railway to Scullin in Missouri.

The court found that the statutory requirement of transacting any business within Missouri was not satisfied. It relied on the fact that all negotiations were conducted in Pennsylvania, that National Railway had no office, personnel, real property, or agent in Missouri, and that National Railway's sole contacts to Missouri were through telephone calls and the use of the mails. *See also, Breiner Equipment Co. v. Dynaquip, Inc.*, 539 F.Supp. 204 (E.D.Mo.1982) (use of telephone calls and the mails alone were insufficient to subject defendant to personal jurisdiction, even where defendant conducted other business in the jurisdiction which was unrelated to the cause of action).

The *Scullin* court also found alternatively that minimum contacts were not present to justify the exercise of personal jurisdiction. " 'Merely entering into a contract with a forum resident does not provide the requisite contacts between a nonresident defendant and the forum state.' " 676 F.2d at 313, *quoting Iowa Electric Light and Power Co. v. Atlas Corp.*, 603 F.2d 1301 (8th Cir. 1979).

Chase argues that the Missouri long-arm statute is intended to give the Missouri courts jurisdiction to the extent permissible under the due process clause of the federal constitution. In claiming that the Missouri long-arm statute and due process permit Missouri to exercise jurisdiction, Chase has argued that these cases are similar to *Burger King, supra,* in which the United States Supreme Court upheld a forum selection clause which was part of a franchisor-franchisee agreement. Assuming that Missouri courts are statutorily permitted to exercise jurisdiction to the limits of due process, we think that *Burger King* is

sufficiently distinguishable from the present case to invalidate Chase's argument.

A franchisor-franchisee agreement involves a long-term business relationship. The agreement's terms encompass virtually every aspect of the franchisee's business. Given the extent to which the franchisor is involved in the franchisee's business and the numerous and significant contacts between them, it is not unreasonable to expect that the franchisee may be hailed into court where the franchisor is domiciled. Contrasting the instant cases, we note that the only contact which Churchill and Transmedia had with the Missouri corporation was the short-term lease of a single piece of office equipment. Were we to find minimum contacts in this case, we would completely eviscerate the requirement that personal jurisdiction be consistent with traditional notions of fair play and substantial justice.

 Having found that Missouri lacks personal jurisdiction over Churchill and Transmedia, we turn to the propriety of granting an injunction to prevent Chase from prosecuting its cases in the Missouri courts. The purpose of a preliminary injunction is to preserve the status quo as it exists or existed before the acts of which the plaintiff complains. *Three Co. Services v. Philadelphia Inquirer*, 337 Pa.Super. 241, 486 A.2d 997 (1985). The plaintiff must prove that the injunction is necessary to prevent immediate and irreparable harm. *Id.* An injunction is appropriate where the loss that would be incurred pending final adjudication would not likely be compensable by an award of money damages. *Id.*

 In enjoining a foreign suit, the court does not proceed upon any claim to stay proceedings in the courts of another state or jurisdiction, but upon the grounds that the person against whom the restraining order is entered is subject to the power of the restraining court. *Baltimore & O.R.R. Co. v. Halchak*, 71 F.Supp. 224 (W.D.Pa.1947). We have already established that Chase is clearly subject to the lower courts' jurisdiction.

■ Irreparable and immediate harm to Churchill and Transmedia would result from the entry of default judgments against them by a forum which lacks personal jurisdiction over them and which is so grossly inconvenient that it would be a breach of due process to require them to defend there or even to enter special appearances to contest jurisdiction. As we have noted previously, if it were permitted to continue suit in Missouri, Chase would be able to force Churchill and Transmedia into default judgments, since the amount of judgment would be less than the costs of mounting a defense. In practical terms, a default judgment could lead to attachment of Churchill's or Transmedia's property in Pennsylvania while an attempt is made to attack collaterally the jurisdiction of the Missouri court. (Moreover, once judgment has been entered, it is extremely difficult to convince a court in a sister state that the court rendering judgment lacked jurisdiction.)

On the other hand, the inconvenience to Chase in having to pursue suit in Pennsylvania rather than Missouri is minimal. Chase carries on business within Pennsylvania on a regular basis and retains local counsel. It is no stranger to the Pennsylvania court system. The equities of these cases clearly dictate that Chase be enjoined from pursuing further action against Churchill and Transmedia in the courts of Missouri.

Affirmed as to the order entered by the Court of Common Pleas of Philadelphia, reversed as to the order entered by the Court of Common Pleas of Montgomery County. The Montgomery County case (No. 961 Philadelphia 1989) is remanded for entry of an order enjoining Chase from further action against Churchill in the Missouri courts and preventing Chase from docketing any default judgment entered in Missouri against Churchill in the courts of this Commonwealth.

Jurisdiction relinquished.