**Fabian v. Steve Brady Inc.**

C.P. of Lehigh County, no. 2000-E-54.

*Wallace B. Eldridge III,* for plaintiff.
*Frederick Weinberg* and *Ira Gutt,* for defendants.

BLACK, *J.*, November 3, 2000—In this action, plaintiff, Matthew M. Fabian, seeks to enjoin defendants, Steven Brady Inc. and Dent Wizard International Corporation, from proceeding with legal action against him in the State of Missouri. DWI previously initiated suit against plaintiff in the Circuit Court of the County of St. Louis, State of Missouri, for money damages and equitable relief arising from alleged contract breaches and alleged tortious misconduct relating to proprietary information of DWI. Plaintiff contends that the Missouri courts do not have personal jurisdiction over him, and therefore that DWI should not be permitted to continue its action against him in that state.

A hearing was held on October 13, 2000, on plaintiff's petition for a preliminary injunction. Based on the evidence presented at this hearing, we have granted the preliminary injunction and make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

(1) Plaintiff is an adult individual residing at 307-1/2 South 15th Street, Allentown, Lehigh County, Pennsylvania.

(2) Defendant Dent Wizard International Corporation is a Delaware corporation with its principal office in St. Louis, Missouri, and is in the business of providing paintless dent removal services independently and through franchisees throughout the entire United States and Canada.

(3) Defendant Steve Brady Inc. is a Pennsylvania corporation that is no longer active. Previously, Brady was

a franchisee of defendant DWI in the paintless dent removal business with its principal office in Conshohocken, Pennsylvania.

(4) On September 30, 1999, DWI acquired all of Brady's assets and took over the operation of its paintless dent removal business. DWI has continued operating this business from Brady's former office in Conshohocken, Pennsylvania.

(5) On August 21, 1996, plaintiff signed an employment agreement with Brady, pursuant to which plaintiff agreed to work exclusively for Brady as a motor vehicle repair technician specializing in the paintless removal of dents. The employment agreement is a preprinted form document. It contains a noncompetition covenant that purports to restrict plaintiff from engaging in the paintless dent removal business within certain time and geographical limits after termination of his employment with Brady. It also provides in paragraph 11 as follows:

"(11) This agreement, as well as any and all addenda thereto, shall be governed by the laws of the State of Pennsylvania and venue shall be proper in the court of competent jurisdiction in Montgomery County, Pennsylvania."

(6) At the same time he signed the employment agreement, plaintiff was also required by Brady to sign an agreement with DWI entitled "Trainee secrecy, noncompete and nondisclosure agreement." The secrecy agreement is also a preprinted form document. It provides that plaintiff is not to use or disclose any proprietary information of DWI and also that plaintiff is not to engage in the paintless dent removal business within certain time and geographical limits after termination of his employ-

ment with a DWI franchisee. The secrecy agreement contains the following provision in paragraph 14:

"(14) *Choice of forum and governing law*

"In light of Dent Wizard's substantial contacts with the State of Missouri and its significant interest in ensuring that disputes as to the validity and enforceability of this agreement are resolved on a uniform basis, trainee and the company agree that (i) any litigation involving any noncompliance with or breach of the agreement, or regarding the validity and/or enforceability of the agreement, shall be filed and conducted in Missouri, and (ii) this agreement shall be interpreted in accordance with and governed by the laws of the State of Missouri, without regard for any conflict of laws principles."

(7) Plaintiff signed both the employment agreement and the secrecy agreement at the same time at Brady's office in Conshohocken, Pennsylvania. Both agreements were presented to him by Brady's principal, Steven Brady. Plaintiff had no contact with DWI prior to the signing of these documents.

(8) After signing the employment agreement and the secrecy agreement, and as a condition of his employment by Brady, plaintiff was required to and did attend an eight-week training program conducted by DWI in St. Louis, Missouri. Plaintiff's participation in this training program was paid for by Brady.

(9) Plaintiff was physically present in the State of Missouri for this eight-week training program in August and September of 1996. He has not been physically present in the State of Missouri at any other time.

(10) When DWI acquired all of Brady's assets on September 30, 1999, it also acquired Brady's rights under

the employment agreement, to the extent that these rights could be legally assigned.

(11) Plaintiff worked for Brady and then DWI as a motor vehicle repair technician specializing in the paintless removal of dents from September 1996 to December 31, 1999. Plaintiff worked out of the office of Brady and then DWI in Conshohocken, Pennsylvania.

(12) Plaintiff traveled to various customer locations to perform his dent removal services. These customers were all located within the Commonwealth of Pennsylvania.

(13) On December 31, 1999, plaintiff resigned his employment with DWI.

(14) Approximately a week later, in early January 2000, plaintiff commenced the operation of his own business as an independent contractor in the paintless removal of dents, and has continued in this business up to the present time.

(15) Plaintiff's office is located in his home in Allentown, Pennsylvania. His dent removal services are performed at customer locations, including automobile dealerships and repair shops, all of which are located in the Commonwealth of Pennsylvania. Some of plaintiff's customers were previously customers of Brady and DWI.

(16) On August 28, 2000, plaintiff was served with a pleading filed by DWI in the Circuit Court of the County of St. Louis, State of Missouri, entitled "plaintiff's petition for injunctive and other relief and damages." The petition asserts claims against plaintiff for damages for breach of the noncompetition provision in the employment agreement (Count I), for violation of the Uniform Trade Secrets Act (Count II), and for interference with

prospective business relationships and/or contracts (Count III). The petition also seeks temporary and permanent injunctions to prohibit plaintiff from engaging in or being employed in the paintless dent removal business in violation of the employment agreement (Count IV) and from divulging DWI's trade or business secrets in violation of the secrecy agreement (Count V).

(17) DWI asserts that the Missouri court has personal jurisdiction over plaintiff, based on his attendance in 1996 at the eight-week training program in St. Louis, Missouri, and also on the forum selection clause in the secrecy agreement.

(18) Plaintiff is 27 years of age and is inexperienced in legal and business matters. Before coming to work for Brady, he was employed as a construction worker.

(19) Plaintiff is of limited financial means. His annual income while employed by Brady and DWI was in the mid-to-high $30,000s.

(20) The litigation of this case in the State of Missouri would be a considerable financial hardship for plaintiff.

(21) The forum selection clause in the secrecy agreement was never discussed with plaintiff at the time it was signed, and he did not fully understand its meaning. The secrecy agreement was presented to plaintiff at the same time that he was presented with the employment agreement, which provides for venue in the court of Montgomery County, Pennsylvania. It is understandable that plaintiff was confused and did not comprehend the effect of these differing provisions.

(22) During his employment with Brady and then DWI plaintiff had no contact with the Missouri office of DWI, other than his attendance at the 1996 training program.

(23) Plaintiff's services while an employee of Brady and DWI were all performed within the Commonwealth of Pennsylvania.

(24) Plaintiff's alleged tortious misconduct and contract breaches all occurred in the Commonwealth of Pennsylvania.

(25) Since DWI does business throughout the United States and Canada and continues to maintain and operate an office in Conshohocken, Pennsylvania, the litigation of its claims against plaintiff in Pennsylvania would not cause any undue hardship to DWI.

## CONCLUSIONS OF LAW

(1) This court has jurisdiction to determine the validity of the Missouri court's exercise of personal jurisdiction over plaintiff.

(2) For a Missouri court to properly exercise personal jurisdiction over plaintiff, the Missouri long-arm statute must provide a basis for such jurisdiction and Missouri's exercise of personal jurisdiction must not violate the due process clause of the Fourteenth Amendment to the United States Constitution.

(3) Plaintiff transacted business in the State of Missouri, within the meaning of Missouri's long-arm statute, when he participated in DWI's eight-week training program in St. Louis, Missouri, in 1996.

(4) The fact that plaintiff transacted business in the State of Missouri in 1996 is not sufficient to establish personal jurisdiction over him by the courts of that state. Missouri's exercise of personal jurisdiction must also be consistent with the due process requirements of the Fourteenth Amendment.

(5) Due process requires that before a court can exercise personal jurisdiction over an out-of-state defendant, that defendant must have had certain minimum contacts with the forum state and, in addition, the exercise of such jurisdiction must comport with traditional notions of fair play and substantial justice.

(6) Minimum contacts consist of some act or acts by which the defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

(7) By attending DWI's eight-week long course in St. Louis, Missouri, in 1996, plaintiff did have minimum contacts with the State of Missouri.

(8) Under the circumstances of this case, Missouri's exercise of personal jurisdiction over plaintiff does not comport with traditional notions of fair play and substantial justice.

(9) DWI's legal action against plaintiff in the Circuit Court of St. Louis, Missouri, violates the due process clause of the Fourteenth Amendment.

(10) Forum selection provisions are subject to judicial scrutiny for fundamental fairness. Although prima facie valid, such clauses are not historically favored, particularly where they are not the product of negotiation.

(11) Under the circumstances of this case, the forum selection clause in the secrecy agreement is fundamentally unfair to plaintiff and is therefore invalid.

(12) The purpose of a preliminary injunction is to preserve the status quo as it exists or existed before the acts of which the plaintiff complains.

(13) A preliminary injunction should be granted where it is necessary to prevent immediate and irreparable harm

that cannot be compensated for by money damages; greater harm would occur from refusing such relief than from granting it; the activity sought to be enjoined is actionable; and the relief requested is reasonably suited to abating this activity.

(14) Issuance of a preliminary injunction barring DWI from further legal proceedings against plaintiff in the State of Missouri is necessary and appropriate in this case to preserve the status quo that existed prior to the commencement of the Missouri litigation, pending a final adjudication of the issue of personal jurisdiction.

(15) Since Brady is not a party to the Missouri litigation and has not threatened any legal action against plaintiff in that state, there is no basis for the issuance of a preliminary injunction against Brady.

## DISCUSSION

A Pennsylvania court will normally defer to the jurisdiction of another state where the case was first filed. *Churchill Corp. v. Third Century Inc.,* 396 Pa. Super. 314, 323, 578 A.2d 532, 538 (1990), *appeal denied,* 527 Pa. 628, 592 A.2d 1296 (1991). In addition, where a contract contains a forum selection clause, a Pennsylvania court will usually enforce such a provision.

"A Pennsylvania court should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Id.* at 321, 578 A.2d at 536.

Nevertheless, a forum selection clause does not automatically confer personal jurisdiction. Regardless of such a clause, where the forum state lacks personal jurisdiction over a Pennsylvania resident, a Pennsylvania court

may properly enjoin the forum-state plaintiff from further proceedings in the forum state. *Id.* at 322, 528 A.2d at 536.

For a Missouri court to properly exercise in personam jurisdiction over a Pennsylvania resident, the Missouri court must have a basis for doing so under Missouri's long-arm statute. *Filipovich v. J.T. Imports Inc.,* 431 Pa. Super. 552, 637 A.2d 314 (1994); *Chromalloy American Corp. v. Elyria Found. Co.,* 955 S.W.2d 1 (Mo. 1997) (en banc). Also, the Missouri court's exercise of jurisdiction must satisfy the due process requirements of the Fourteenth Amendment to the United States Constitution. *Burger King Corporation v. Rudzewicz,* 471 U.S. 462 (1985); *Churchill Corp. v. Third Century Inc., supra.*

Missouri's long-arm statute[1] extends jurisdiction over parties who have transacted business within the state. Mo. Ann. Stat. §506.500. Under Missouri law, "even a single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit." *Chromalloy American Corp. v. Elyria Found. Co., supra* at 4. Missouri courts have interpreted the "transaction of any business" provision in the Missouri long-arm statute so broadly that it applies in a contract dispute if the non-resident defendant has entered the state for even one meeting relating to the contract at issue. See *May Dept. Stores Co. v. Wilansky,* 900 F. Supp. 1154, 1162 (E.D. Mo. 1995).

---

1. "Any person . . . whether or not a citizen or resident of this state, . . . who in person . . . [d]oes any of the acts enumerated in this section, thereby submits such person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of such acts: (1) The transaction of any business within the state. . . ."

In 1996, plaintiff transacted business in Missouri, within the meaning of its long-arm statute, when he participated in DWI's eight-week training program in St. Louis. Mo. Ann. Stat. §506.500. The Missouri suit that plaintiff seeks to enjoin is based, at least in part, on DWI's claim that plaintiff is unlawfully using trade secrets of DWI learned during this training program. Therefore, under Missouri's long-arm statute, plaintiff's participation in this training program is sufficient to authorize the suit against him in the Missouri courts.

However, as noted above, even though the requirements of Missouri's long-arm statute are met, the exercise of jurisdiction must still comport with the due process clause of the Fourteenth Amendment to the United States Constitution. *Burger King, supra; Filipovich, supra.* Where a non-Pennsylvania resident is sued in a Pennsylvania court, the court will decline to exercise jurisdiction, even if permitted by Pennsylvania's long-arm statute, if the exercise of jurisdiction would violate due process. See *McCall v. Formu-3 International Inc.,* 437 Pa. Super. 575, 650 A.2d 903 (1994) (finding the Pennsylvania long-arm statute conferred jurisdiction upon Pennsylvania courts but that the exercise of jurisdiction by a Pennsylvania court would violate the due process clause of the Fourteenth Amendment). The Missouri courts are similarly constrained in the exercise of personal jurisdiction by federal due process considerations.

The due process clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or rela-

tions.' " *Burger King* at 471-72. To establish personal jurisdiction over a defendant consistent with due process, the plaintiff must demonstrate (1) that the defendant has certain minimum contacts with the forum state and (2) that the forum state's exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice. In determining whether these requirements have been met, a reviewing court is not to employ a mechanical test, but rather is to examine and evaluate the specific facts of each case. *Id.* at 478-79.

The minimum contacts requirement "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* at 475 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). Random, fortuitous or attenuated contacts will not suffice. *Id.*

In the instant case, we find that plaintiff did have the requisite minimum contacts with the State of Missouri as a result of his attendance at the 1996 training session in St. Louis. At that time he purposefully availed himself of the benefits and protections of the laws of Missouri. His physical presence in Missouri was related to his employment duties. It was not a random, fortuitous or attenuated contact.

Nevertheless, the jurisdictional rules are not intended to place one party at a serious disadvantage in litigating with another party. See *Burger King* at 478 (citing *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972)). Therefore, even though the "minimum contacts" test has

been met, the nature of these contacts must be examined to "determine whether the assertion of personal jurisdiction would comport with 'traditional notions of fair play and substantial justice.' " *Burger King* at 475-76. In conducting this analysis, a court must consider the extent to which litigation in the foreign state would be an unreasonable burden on the defendant in that action. *Id.*

Based on the evidence presented at the preliminary hearing, we conclude that fair play and substantial justice require that the litigation commenced by DWI in the State of Missouri against plaintiff be conducted instead in the Commonwealth of Pennsylvania. There are a number of reasons that drive us to this conclusion.

First, it is clear that there would be considerable hardship to plaintiff in litigating in the State of Missouri. Missouri is a long way from Pennsylvania. Plaintiff is of limited financial means, and he lacks experience in legal and business matters. We recognize that mere inconvenience in terms of expense or travel time does not alone constitute a violation of due process. However, in this case, much more than mere inconvenience is involved. Considering the distance between Missouri and Pennsylvania, plaintiff's limited financial means, and his inexperience with long-distance litigation, we are convinced that a trial of the parties' dispute in the State of Missouri would place plaintiff at such a distinct disadvantage that he would probably have to default in the proceeding. This prospect does not comport with traditional notions of fair play and substantial justice. See *State ex rel. Marlo v. Hess,* 669 S.W.2d 291, 294 (Mo. App. 1984) (finding that exercise of jurisdiction "could be unreasonable if it resulted in undue hardship, such as a necessity to travel or transport witnesses such a dis-

tance that expenses would render access to the courts impractical.").

Second, plaintiff's contacts with the State of Missouri have been quite limited. He signed both the employment agreement and the secrecy agreement in Pennsylvania. His employment activities for Brady and DWI were all performed in Pennsylvania. The contract breaches and tortious misconduct alleged by DWI all took place in Pennsylvania. Except for the training program back in 1996, plaintiff was never physically present in Missouri and had no contact with DWI's Missouri office.

Third, the employment agreement, on which Counts I and IV of the Missouri suit are based, provides for Pennsylvania law to govern and for venue in the court of Montgomery County, Pennsylvania. DWI states that it will withdraw Counts I and IV in the Missouri action, but it has yet to do so.

Fourth, DWI does business throughout the United States and Canada, maintains an office in Conshohocken, Pennsylvania, and is quite capable of litigating the issues between the parties in a Pennsylvania court. We note that DWI was represented by legal counsel from Florida at the preliminary injunction hearing. Although DWI states in its brief that all its witnesses are located in the State of Missouri, no evidence was presented at the hearing to support this claim. Since the alleged contract breaches and tortious misconduct all occurred in Pennsylvania, we find this claim dubious.

Finally, the forum selection clause in the secrecy agreement is fundamentally unfair in the circumstances of this case, and therefore is unenforceable. Such clauses in a form contract are always subject to judicial scrutiny for fundamental fairness. *Carnival Cruise Lines Inc. v. Shute,*

499 U.S. 585, 595 (1991). In this case the clause was contained in a preprinted form contract and was not specifically bargained for. The secrecy agreement was presented to plaintiff for signature at the same time as the employment agreement, which provides for venue in Montgomery County. Thus, it is understandable that plaintiff did not fully comprehend the meaning of this forum selection clause. Although such clauses are prima facie valid, they are not historically favored, particularly where they are not the product of negotiation. See *Churchill Corp., supra* at 325, 578 A.2d at 538; *Chase Third Century Leasing v. Williams,* 782 S.W.2d 408 (Mo. App. 1989); and *State ex rel. Marlo v. Hess,* 669 S.W.2d 291 (Mo. App. 1984).

Accordingly, the exercise of jurisdiction over plaintiff in this matter by a Missouri court would, in our judgment, violate the due process clause of the Fourteenth Amendment.

Defendant states that plaintiff waived his right to contest the jurisdiction of the Missouri court by filing a pro se motion to dismiss in that court for lack of personal jurisdiction. However, a litigant cannot be said to have waived personal jurisdiction by filing a motion contesting such jurisdiction. Defendant has cited no authority for such a startling proposition, and we are aware of none. We understand that plaintiff's pro se motion in Missouri has since been withdrawn.

In considering whether to grant preliminary injunctive relief to plaintiff, we note the purpose of this remedy:

"The purposes of a preliminary injunction are to preserve the status quo and prevent imminent and irreparable harm which might occur before the merits of the

case can be heard and determined." *Soja v. Factoryville Sportsmen's Club,* 361 Pa. Super. 473, 477, 522 A.2d 1129, 1131 (1987).

The requirements for obtaining a preliminary objection are well-established. The party seeking a preliminary injunction must show the following: "first, that it is necessary to prevent immediate and irreparable harm which could not be compensated by damages; second, that greater injury would result by refusing it than by granting it; and third, that it properly restores the parties to their status as it existed immediately prior to the alleged wrongful conduct . . . . Even more essential however, is the determination that the activity sought to be restrained is actionable, and that the injunction issued is reasonably suited to abate such activity." *School District of Wilkinsburg v. Wilkinsburg Education Association,* 542 Pa. 335, 337 n.2, 667 A.2d 5, 6 n.2 (1995) (quoting *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978)). In reviewing a request for preliminary relief, we must be mindful that "[a] preliminary injunction is an extraordinary remedy and should only be granted where the plaintiff has established a clear right to the relief requested." *Hart v. O'Malley,* 544 Pa. 315, 318 n.1, 676 A.2d 222, 223 n.1 (1996).

In the instant case we believe that plaintiff will suffer immediate and irreparable harm if the litigation in Missouri is allowed to proceed, because he will have to either expend considerable sums defending the case there, or allow a default judgment to be entered against him—most likely the latter. The refusal of the preliminary injunction request would cause greater harm than granting the injunction, since the delay of a few months until a

final hearing can be held will not cause any significant harm to DWI.[2] The injunction will restore the parties to their positions immediately before the Missouri litigation and is reasonably suited to achieve this purpose. Finally, we find plaintiff's claim to be actionable and his right to relief clear. Therefore, for the reasons stated, we have granted the preliminary injunction.

## PRELIMINARY INJUNCTION

Now, November 3, 2000, upon consideration of plaintiff's petition for preliminary injunction, after hearing and review of the briefs submitted by the parties, for the reasons set forth in the accompanying opinion, it is ordered and decreed as follows:

(1) A preliminary injunction is hereby issued enjoining defendant Dent Wizard International Corporation, its agents and employees, preliminarily and pending a final hearing, (a) from pursuing any litigation in the State of Missouri against plaintiff, Matthew M. Fabian, including without limitation, a certain action styled: *Dent Wizard International Corporation, a Delaware corporation v. Matthew M. Fabian,* no. 00CC-001215, in the Circuit Court of the County of St. Louis, Twenty-First Judicial District, State of Missouri, and (b) from entering of record in any Pennsylvania court any judgment rendered in fa-

---

2. Plaintiff's counsel has called to our attention an unpublished decision of the Circuit Court of St. Louis County, Missouri, filed March 22, 2000, in the case of *DWI v. Roberts,* docket no. 99CC-4304, in which DWI's request for a preliminary injunction against the defendant was refused on the ground that DWI's dent removal process was not a trade secret because it does not differ substantially from the process employed by its competitors and is generally known in the industry. We understand this decision is currently on appeal in Missouri.

vor of said defendant against plaintiff in the Circuit Court of the County of St. Louis, Twenty-First Judicial District, State of Missouri, or in any other court of the State of Missouri.

(2) A final hearing on plaintiff's complaint in equity shall be held on Friday, January 19, 2001, at 9:30 a.m., Courtroom 3A, Lehigh County Courthouse.

(3) This preliminary injunction is conditioned upon the posting of a bond without corporate surety in the amount of $15,000.

(4) Plaintiff's request for a preliminary injunction against defendant Steve Brady Inc. d/b/a Dent Wizard of Pennsylvania is denied.