# Gary Lorenzon Contractors Inc.
## v. Allstates Mechanical Ltd.

*John P. McShea* and *Anthony J. DiMarino,* for plaintiff.

*Adam G. Marcus* and *Robert J. Hoffman,* for defendant.

SHEPPARD JR., *J.,* May 10, 2001—Defendants, Allstates Mechanical Ltd. and Fidelity Deposit Company of Maryland, have filed preliminary objections to the complaint of plaintiff, Gary Lorenzon Contractors Inc. For the reasons set forth, the court is entering a contemporaneous order overruling the objections.

## BACKGROUND

In March 2000, John Walters, then an estimator for Allstates, contacted Lorenzon about bidding for a construction project for the School District of Philadelphia. On April 7, 2000, Lorenzon submitted a bid proposal to perform certain demolition, roofing and structural steel work in connection with the project. Three days later, Allstates entered into a contract with the district to act as general contractor for the project. In connection with the contract, Allstates executed and delivered to the district

a labor and material payment bond, with Fidelity as surety.

Allstates mailed Lorenzon a proposed subcontract agreement on April 27, 2000 with a proposed cost of $69,000. The subcontract included a forum selection clause requiring that "any and all actions brought by any party . . . in connection with this agreement" be brought in the Court of Common Pleas of Delaware County "where venue shall be and is hereby established." (Forum selection clause.) Complaint exhibit B, ¶2. Lorenzon responded on May 4, 2000 by seeking clarification of certain terms in the subcontract, including the required use of American steel and the exclusion of work on a thermal plant penthouse unit from the subcontract's scope. In spite of the parties' failure to execute the subcontract, Norman Long, Allstates' manager for the project, subsequently directed Lorenzon to proceed with its portion of the project. Believing that its interpretation of the subcontract had been accepted, Lorenzon commenced work on the project.

In July 2000, Long left Allstates and was replaced as project manager by Walters. Shortly before August 3, 2000, Walters requested that Lorenzon submit a proposal to provide labor and material for the installation of the structural steel for the thermal plant. On September 18, 2000, Lorenzon submitted a proposal to provide labor only at a cost of $44,000. Lorenzon contends that Walters orally agreed to the thermal plant proposal by instructing Lorenzon to start immediately and assured Lorenzon that Allstates would provide a $44,000 purchase order for this additional work.

Lorenzon asserts that it completed the thermal plant work on September 27, 2000 and submitted an invoice

to Allstates for $44,000. Sometime during that week Walters contacted Lorenzon, stating that a mistake in the thermal plant's steel configuration design required construction modification. Walters allegedly acknowledged that the mistake was not caused by Lorenzon and requested that Lorenzon make the modifications as soon as possible, with a purchase order for the additional steel to be provided by Allstates. According to the complaint, Lorenzon incurred additional expenses of $107,918.33 in materials and labor costs between September 28 and October 25, 2000 in completing the modifications.

Up through October 9, 2000, Lorenzon had been paid only $30,071 for its labor and services. On that day, Gary Lorenzon, a principal of Lorenzon, met with Walters and Anthony Marano, president of Allstates, to discuss how Allstates would pay for the modifications. According to Lorenzon, Allstates agreed to pay for the modifications on a time and material basis, and Marano reaffirmed that the subcontract did not include work on the thermal plant.

On October 10, 2000, Lorenzon requested payment from Allstates beyond that already made, and, when Allstates agreed, Gary drove to Allstates' office to pick up a check. Upon his arrival, he was told that Allstates would not pay Lorenzon unless he signed the subcontract. Reluctantly, Gary agreed and signed what he believed to be a copy of the subcontract.[1] The next day, Lorenzon's counsel wrote to Walters to confirm that the clarifications of Lorenzon's May 4 letter had been incor-

---

1. According to the complaint, Gary was not shown and was not given an opportunity to review any pages of the document he signed except for the signature page. These missing pages describe, among other things, the scope of Lorenzon's work on the project.

porated into the subcontract. Walters responded that this was so.

Lorenzon alleges that Allstates still owes it $203,557.87 and has not made any payments for the modifications. In addition, Allstates allegedly has retained Lorenzon property with a value of $7,000. On this basis, Lorenzon has asserted claims for breach of the oral agreement for the construction of the thermal plant, unjust enrichment, violations of the Pennsylvania Contractor and Subcontractor Payment Act,[2] replevin and breach of suretyship agreement.[3]

## DISCUSSION

Defendants argue that the forum selection clause requires that this action be brought in Delaware County[4] and that 12 paragraphs in the complaint include more than one material allegation, in violation of Pa.R.C.P. 1022.[5] This court submits that the objections are without merit.

## I. *The Forum Selection Clause Does Not Render Venue in Philadelphia Improper*

When preliminary objections challenge venue, "the defendant is the moving party and bears the burden of

---

2. 73 Pa.C.S. §§501-516.

3. Significantly, Lorenzon does not bring a claim for breach of the subcontract.

4. As a remedy, the defendants ask that the matter be either dismissed or transferred to Delaware County at Lorenzon's cost. Other than raising the forum selection clause, the defendants do not contest Lorenzon's assertion that venue is proper in Philadelphia.

5. Specifically, the defendants have objected to paragraphs 9, 14, 19, 23, 26, 27, 28, 29, 31, 35, 38 and 54.

supporting [its] claim" of improper venue. *Liggitt v. Liggitt,* 253 Pa. Super. 126, 131, 384 A.2d 1261, 1263-64 (1978). See also, *Gale v. Mercy Catholic Medical Center Eastwick Inc., Fitzgerald Mercy Division,* 698 A.2d 647, 652 (Pa. Super. 1997) (the moving party has the burden of showing that the original choice of venue is improper). Consequently, to prevail, the defendants must show that Philadelphia constitutes improper venue.

Pennsylvania law holds that, where a forum selection clause purports to make an otherwise proper venue improper, "it would be contrary to public policy to allow an agreement made in advance of the dispute to oust said tribunal's jurisdiction." *Central Contracting Co. v. C.E. Youngdahl & Co.,* 418 Pa. 122, 132-33, 209 A.2d 810, 815-16 (1965) (citing *Rea's Appeal,* 13 W.N.C. 546 (1883)). See also, *Healy v. Eastern Bldg. & Loan Ass'n,* 17 Pa. Super. 385, 392 (1901) (an agreement to sue only in New York does not prevent plaintiff from bringing action in a Pennsylvania court). However, this does not mean that an agreement limiting the forum for future dispute resolution is per se invalid:

"The modern and correct rule is that while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have *freely agreed* that litigation shall be conducted in another forum and where such agreement is *not unreasonable at the time of litigation."* *Central Contracting,* 418 Pa. at 133, 209 A.2d at 816. (emphasis added) See also, *Morgan Trailer Mfg. Co. v. Hydraroll Ltd.,* 759 A.2d 926 (Pa. Super. 2000) (using the test laid out in *Central Contracting* to determine the validity of a

forum selection clause). An agreement on a particular forum is unreasonable:

"[W]here its enforcement would, under all circumstances existing at the time of litigation, *seriously impair* plaintiff's ability to pursue its cause of action. . . . Mere inconvenience or additional expense is not the test of unreasonableness if the plaintiff received under the contract consideration for its agreement to litigate in a specified forum. . . . If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by its agreement." *Churchill Corp. v. Third Century Inc.,* 396 Pa. Super. 314, 322, 578 A.2d 532, 536 (1990). (citations omitted) (emphasis added) See also, *Williams v. Gruntal & Co.,* 447 Pa. Super. 357, 361, 669 A.2d 387, 389 (1995) ("if the agreement to proceed in the alternative forum has the effect of seriously impairing the plaintiff's ability to pursue a cause of action, the court will strike such an agreement as unreasonable").

This court is not convinced that this dispute is governed by the forum selection clause, which applies only to actions brought "in connection with" the subcontract. Lorenzon is not suing for a breach of the subcontract, rather it is seeking compensation only for work done outside the subcontract's scope. Its claims, therefore, are independent of the subcontract, and the forum selection clause should not be controlling. Cf. *Morgan Trailer Mfg. Co.,* 759 A.2d at 932 (although the plaintiff "certainly had a contract with appellees, that does not mean that all future relations with [the defendants] are somehow connected to that contract" and thus governed by its forum selection clause).

Even if this were not so, application of the forum selection clause here would not be reasonable. Lorenzon

contends that it is unaware of facts that would permit it to sue Fidelity in Delaware County. Plaintiffs' memorandum at 8.[6] Because the two defendants are jointly and severally liable, it asserts, an inability to proceed against both defendants would seriously impair its ability to pursue its cause of action and would impede its pursuit of substantial justice. This court finds this argument persuasive and believes that enforcement of the forum selection clause would be unreasonable. Thus, the case will not be dismissed due to improper forum or transferred to Delaware County.[7]

## II. *Any Potential Violations of Rule 1022 Do Not Require Dismissal of the Complaint*

Defendants next urge that the complaint should be dismissed because it does not comply with the dictates of Rule 1022, which directs that each paragraph in a pleading "shall contain as far as practicable only one material allegation." The defendants' position is unpersuasive.

Rule 1022 was constructed to allow a pleader substantial flexibility:

"Section 5 of the suspended Practice Act of 1915 provided that each paragraph 'shall contain but one material allegation.' Strict adherence to this command created practical difficulties. For example, an averment that a defendant 'executed and delivered' a promissory note would give rise to a question whether one material alle-

6. Although Fidelity has joined with Allstates in asking that this matter be transferred to Delaware County, it has not waived its right to file objections to venue there.

7. Given the conclusions that application of the forum selection clause would be unreasonable and because the forum selection clause does not govern this dispute, there is no need to consider whether Lorenzon freely agreed to it.

gation had been pleaded or two. Rule 1022 rewrites this so that the requirement that each paragraph of a pleading contain one material allegation is followed only as far as practicable. Perhaps this qualification results in the section having no real meaning whatever, but in any event, the emphasis on form is removed, and the matter is left to the courts with *ample room for intelligent and flexible treatment.* If a clear statement and the requirements of good style necessitate the inclusion of two material allegations in one paragraph, this may be done without fear that there will be a formal violation of the rules and that a plaintiff will be put to the burden of arguing a formal objection to his or her pleading." Goodrich-Amram 2d §1022:2. (emphasis added)

Given this construction, courts have been liberal in their examination of pleadings that allegedly violate Rule 1022:

"This standard must be applied with great flexibility, not only because of the express direction of the rule that, 'the standard be followed as far as practicable,' but also because there is no set standard as to what constitutes a material allegation. Mere length, complexity, and verbosity do not in themselves violate Rule 1022 if the subsidiary facts averred fit together into a single allegation." *General State Authority v. Sutter Corp.,* 24 Pa. Commw. 391, 394, 356 A.2d 377, 380 (1976) (quoting 2A Pennsylvania Civil Practice §1022.3). (footnote omitted)[8]

---

8. While no Pennsylvania appellate courts have adopted a specific standard, several trial courts have refused to sustain an objection relying on Rule 1022 in the absence of prejudice to the party responding to the pleading. See *Philadelphia v. Konopacki,* 2 D.&C.3d 535, 541 (C.P. Phila. 1975) ("[u]nder Rule 1022, the test is whether defendant would be subjected to prejudice or violation of a constitutionally protected right in framing his answer"); *Bethlehem Steel Corp. v. Litton*

The court does not see any reason to engage in an extensive analysis of each of the 12 paragraphs that the defendants assert are violative of Rule 1022. Suffice it to say that the court has reviewed the paragraphs in question and finds that they do not prejudice the defendants or impede defendants' ability to answer the complaint. Thus, the objections asserting violations of Rule 1022 are overruled.

## CONCLUSION

For the reasons discussed the objections are overruled. The defendants should file an answer to the complaint within 20 days. A contemporaneous order to this effect will be issued.

## ORDER

And now, May 10, 2001, upon consideration of the preliminary objections of defendants, Allstates Mechanical Ltd. and Fidelity Deposit Company of Maryland, to plaintiff's complaint and plaintiff's response thereto, the respective memoranda and in accord with the opinion being filed contemporaneously with this order, it is hereby ordered that the preliminary objections are overruled. The defendants directed to file an answer to the plaintiff's complaint within 20 days of this order.

*Indus. Inc.,* 71 D.&C.2d 635, 643 (C.P. Allegheny 1974) (Rule 1022 "has been construed liberally; moreover, if no real prejudice to defendant is shown, technical violations generally have been ignored"); *Lynch v. Hoover,* 3 D.&C.2d 686, 690 (C.P. Dauphin 1955) (complaint that violates Rule 1022 should not be stricken where it "has not prejudiced defendant or made it impossible or very difficult for him to frame a reply. The difficulty or impossibility of answering a complaint is the test to be used in applying Rule 1022"). Cf. Goodrich-Amram 2d §1022:2 ("[a] good general test of compliance with Rule 1022 is the difficulty or impossibility of answering a complaint").