Reynolds Advanced Materials, Inc. v. Ely

C.P. of Northampton County, No. C-48-CV-2013-3512

*John S. Harrison*, for plaintiff.
*Malcolm J. Gross* and *Loren L. Speziale*, for defendants.

KOURY, *J.*, August 1, 2013—The parties are before the court on (1) the preliminary objections of defendants Katherine Ely ("Ely"), Andrew Edman ("Edman"), and Plus Fabrication, LLC ("Plus Fabrication") (collectively, "defendants") to the complaint of plaintiff Reynolds Advanced Materials, Inc. ("Reynolds") and (2) defendants' motion to dismiss the complaint based on the doctrine of *forum non conveniens* pursuant to 42 Pa.C.S.A. §5322(e). For the reasons set forth below, we find that our Court is a *forum non conveniens* for this action.

## BACKGROUND

### I. The Parties

Reynolds's pleadings make conflicting statements about its structure and locations. Reynolds's complaint states that "[Reynolds] is a Massachusetts corporation, authorized to do business in Pennsylvania, and has an address of 45 Electric Avenue, Brighton, MA 02135." Compl. ¶1. However, exhibit B to the complaint, a contract between Reynolds and Edman, states that Reynolds is "a Texas corporation, with an address 2131 S. Harwood St., Dallas, TX 75215." Compl., ex. B, at 1.

In an apparent effort to resolve the conflict between these documents, in Reynolds's answer to defendants' preliminary objections, Reynolds states that "[Reynolds] is a corporate entity, incorporated under the laws of Texas, with a principal office location of 2000 Saint John Street, Easton, Pennsylvania 18042." Plaintiff's answer to defendants' preliminary objections ("answer") ¶2. The affidavit of Sal "Trey" Bianco filed in support of Reynolds's answer (the "Bianco affidavit") states that "[Reynolds] is a corporate entity operating in eight (8) locations throughout the United States" and that "[e]ach location that [Reynolds] operates is a distinct corporate entity, owned wholly by myself and the other joint owner." Aff. of Sal "Trey" Bianco ("Bianco aff.") ¶¶2-3. Reynolds asserts that the Easton office makes management decisions for Reynolds's business in Massachusetts, including review and approval of purchase orders, shipment of products, payment of invoices, payroll, design of products, customer lists, marketing and advertising, human relations, employee training, and technical and sales assistance. *See* answer ¶¶29, 32; Bianco aff. ¶¶4, 8-10. Taking these documents together, and viewing them in the light most favorable to Reynolds, it would appear that Reynolds is a Texas corporation with operations in Texas, Massachusetts, and several other locations and an administrative office in Easton, Pennsylvania.

Reynolds is owned and operated by two individuals, Bianco and Robert C. Western ("Western"), who work in Reynolds's office in Easton. *See* compl. ¶12; Bianco aff. ¶¶1, 3, 9; aff. of Andrew Edman ("Edman aff.") ¶16. Defendants assert that Bianco and Western live in New

Jersey. *See* Edman aff. ¶16. Plaintiffs have not denied this assertion.

Reynolds is a distributor for Smooth-On, Inc. ("Smooth-On"), a company that designs and manufactures rubbers, plastics, foams, and similar materials for use in a variety of applications including sculpture, restorations, prototypes and models, and special effects in motion pictures. *See* compl. ¶¶6-8. Eighty percent of the products sold by Reynolds are manufactured by Smooth-On. *See* Bianco aff. ¶5. Reynolds orders products from Smooth-On, and Smooth-On ships the products directly to Reynolds's customers. *See* compl. ¶¶10-11. Smooth-On is a Pennsylvania corporation with its principal place of business in Easton, Pennsylvania. *See* compl. ¶9; Bianco aff. ¶5. Although Smooth-On is owned and operated by Bianco and Western, there is no corporate affiliation between Reynolds and Smooth-On. *See* Bianco aff. ¶7. Smooth-On is not a party to this action.

Defendants Edman and Ely are adult individuals who live in Massachusetts. *See* compl. ¶¶2-3; answer ¶56; Edman aff. ¶2; aff. of Katherine Ely ("Ely aff.") ¶2. Plus Fabrication is a Massachusetts limited-liability corporation with its principal place of business in Cambridge, Massachusetts. *See* compl. ¶4; answer ¶56. Edman and Ely are the managers of Plus Fabrication and work in its office in Cambridge, Massachusetts. *See* compl. ¶¶2-3; Edman aff. ¶23; Ely aff. ¶28; Plus aff. ¶¶3-4.

## II. Reynolds's Hiring of Edman and Ely

In 2010, Edman applied for a position with Reynolds and was interviewed by Eli Mather ("Mather") and Scott

Moulton ("Moulton") at Reynolds's office in Brighton, Massachusetts. *See* Edman aff. ¶¶3, 6. On June 3, 2010, Mather sent a letter to Edman offering him a position as an Operations Support associate in Reynolds's Brighton, Massachusetts office at a salary of $40,000 per year. *See* compl. ¶¶13-14, ex. A; Edman aff. ¶7. On June 6, 2010, Edman signed the offer letter. *See* compl. ¶¶13-14, ex. A; Edman aff. ¶8.

On June 7, 2010, Edman signed an employment agreement that provided, among other things, that he would not use or disclose any proprietary information or technology he acquired or developed during the course of his employment with Reynolds. *See* compl. ¶¶15-19, ex. B. There was no forum-selection clause in Edman's employment agreement. *See id.*, ex. B.

On June 21, 2010, Edman began his employment with Reynolds. *See* Edman aff. ¶9. He was later promoted to Branch Manager and oversaw operations in New York and New England. *See id.* ¶9.

In June 2011, after Edman was promoted to Branch Manager, he interviewed Ely for a position with Reynolds. *See* Edman aff. ¶10; Ely aff. ¶¶3, 6. Ely had applied to Reynolds based on the recommendation of her then-employer, Linda Ross of Linda Ross Art Studio in Boston. *See* Ely aff. ¶3. On June 16, 2011, Edman sent Ely a letter offering her a position as a Technical and Sales Support associate in Reynolds's Brighton, Massachusetts office at a salary of $45,000 per year. *See* compl. ¶20, ex. C; Ely aff. ¶7.

On June 19, 2011, Ely signed the offer letter and an

employment agreement that provided, among other things, that she would not use or disclose any proprietary information or technology she acquired or developed during the course of her employment with Reynolds, compete with Reynolds or any of its related entities, solicit Reynolds's customers for purposes at odd with those of Reynolds, solicit Reynolds's employees to leave their employment with Reynolds, or divert any business opportunities relating to the business of Reynolds. *See* compl. ¶¶21-27, exs. C, D; Edman aff. ¶11; Ely aff. ¶¶8-10. In addition, Ely's employment agreement provided that for a period of two years following termination of her employment with Reynolds, she would not, acting alone or in concert with others, be connected with any entity engaged in Reynolds's business in competition with Reynolds anywhere in Massachusetts; solicit any customers of Reynolds with whom she had had contact in the last five years of her employment at Reynolds; or solicit any of Reynolds's employees to leave their employment with Reynolds. *See* compl., ex. D. Ely's employment agreement contained a forum-selection clause providing that she "consents to the exclusive jurisdiction and venue of the Court of Common Pleas of Northampton County, Pennsylvania…which shall apply Pennsylvania law." *Id.* ¶28, ex. D, §4.4.

On July 11, 2011, Ely started working at Reynolds at the Brighton, Massachusetts office. *See* Ely aff. ¶14. She continued in that position for the next nine months. *See id.*

### III. Reynolds's Training of Edman and Ely

Edman and Ely each received two weeks of training on

sales and products from Bianco and Western at the Easton, Pennsylvania office. *See* Bianco aff. ¶¶11-12; Edman aff. ¶15; Ely aff. ¶14. After Edman was promoted to Branch Manager, he went to Easton for a meeting of management and sales representatives. *See* Edman aff. ¶15. Neither the training sessions nor the management meeting involved any outside business activity. *See* Edman aff. ¶15; Ely aff. ¶14. Edman and Ely have made no other visits to Easton, Pennsylvania. *See* Edman aff. ¶15; Ely Aff. ¶14.

In its complaint, Reynolds asserts that at the time Edman and Ely were hired by Reynolds, they had no experience working with or selling the types of materials sold by Reynolds and designed and manufactured by Smooth-On. *See* compl. ¶33. Reynolds alleges that while Edman and Ely were employed by Reynolds, Reynolds taught them about the design, manufacture, and sale of Smooth-On materials and gave them valuable trade secrets relating to sales, marketing, customers, personnel, purchasing, vendors, production, costs, and profit margins. *See id.* ¶34-40.

Edman and Ely assert that, contrary to Reynolds's allegations, at the time they accepted their respective positions with Reynolds, they had had substantial experience in mold making and casting and using products distributed by Reynolds. *See* Edman aff. ¶4; Ely aff. ¶4. In addition, Edman asserts that he had had substantial experience in sales. *See* Edman aff. ¶4.

IV. Reynolds's Business

Edman and Ely assert that although Reynolds sells products and materials, it does not provide mold making

or casting services. *See* Edman aff. ¶5; Ely aff. ¶25. They assert that while they were employed by Reynolds, it was standard practice for Reynolds to refer its customers to other companies that provided mold making and casting services. *See* Edman aff. ¶21; Ely aff. ¶25. Reynolds's employees were prohibited from performing mold making or casting services for customers while they were employed by Reynolds. *See* Ely aff. ¶11. Because of this restriction, Ely asserts that once she began working for Reynolds, she stopped performing mold making and casting contract work. *See id.* ¶12. Although Reynolds's employees were permitted to give customers samples of Reynolds's materials, they were not permitted to provide molds or castings that the customers could use in their businesses or for resale. *See id.* ¶11.

## V. Edman's and Ely's Departure from Reynolds

In the spring of 2012, Reynolds changed Ely's job responsibilities and required her to travel throughout the New York and New England areas. *See id.* ¶16. Ely did not believe that she had adequate training or experience for her new job responsibilities, and she did not like the travel. *See id.* ¶18. Her superiors became critical of her job performance. *See id.* As a result of this conflict, on or about July 9, 2012, Ely left Reynolds. *See id.* ¶¶19-20.

The same month, Ely took a part-time position with Metalwerx, a nonprofit school in Massachusetts that teaches jewelry and metalsmithing. *See id.* ¶¶19, 23. She also started Plus Fabrication as a sole proprietorship through which she began performing freelance mold making and casting work. *See id.* ¶¶23, 25. In addition,

in September 2012, Ely accepted a position with Artisans Asylum in Massachusetts, where she taught night classes in mold making and casting. *See id.* ¶24.

In the spring of 2012, Western became critical of Edman's job performance at Reynolds. *See* Edman aff. ¶¶17-18. As a result of this conflict, in December 2012, Edman left Reynolds. *See id.* ¶¶18-19. In January 2013, Edman took a position working for Ely at Plus Fabrication. *See* Edman aff. ¶20; Ely aff. ¶26.

## VI. Plus Fabrication's Business

When Ely started Plus Fabrication, she began purchasing mold making and casting supplies from Reynolds at Reynolds's showroom in Brighton, Massachusetts. *See* Edman aff. ¶22; Ely aff. ¶27. However, on March 8, 2013, Edman and Ely went to the Brighton showroom together to purchase supplies, and Reynolds informed them that it would no longer sell to them. *See* Edman aff. ¶22; Ely aff. ¶27. Reynolds provided no explanation. *See* Edman aff. ¶22; Ely aff. ¶27.

On March 15, 2013, Ely filed an application to register Plus Fabrication as a Massachusetts limited liability corporation. *See* Edman aff. ¶23; Ely aff. ¶28; Plus aff. ¶2. Edman and Ely assert that the business of Plus Fabrication is conducted in Massachusetts and other northeastern states outside Pennsylvania. *See* Edman aff. ¶23; Ely aff. ¶28; aff. of Katherine Ely on Behalf of Plus Fabrication, LLC ("Plus aff.") ¶6.

## VII. The Parties' Contentions

On April 16, 2013, Reynolds commenced this action,

asserting that Edman and Ely have engaged in a continuous pattern of conduct in violation of their obligations under their respective employment agreements. *See* compl.; answer ¶¶23-24. Reynolds alleges that Edman and Ely organized and created Plus Fabrication while they were employed by Reynolds. *See* compl. ¶¶41-44. Reynolds alleges that Edman and Ely emailed Reynolds's trade secrets and other proprietary information to their personal email accounts; stole products from Reynolds and used those products for their personal benefit; attempted to recruit Reynolds's employees; began selling products that compete with Smooth-On's products; asked Reynolds's customers to purchase products and services from Plus Fabrication; offered customers classes and instruction in which they used copies of materials created by Reynolds; and advised customers to terminate their relationships with Reynolds. *See id.* ¶¶45-55, 58.

Reynolds has asserted eight claims: interference with contractual relations against Edman, Ely, and Plus Fabrication (count I); violation of the Uniform Trade Secrets Act, 12 Pa.C.S.A. §5301 et seq., against Edman, Ely, and Plus Fabrication (count II); breach of contract against Edman (count III); and breach of contract against Ely (count IV). *See id.* ¶¶56-82. Reynolds seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief (1) enjoining defendants from communicating with Reynolds's customers, employees, and vendors, from misappropriating, using, or disclosing Reynolds's and Smooth-On's trade secrets, and from receiving any benefit from the use of such trade secrets; and (2) requiring that defendants return all items

containing Reynolds's or Smooth-On's trade secrets. *See id.* ¶¶56-82.

Edman and Ely acknowledge that they used Reynolds's customer lists in performing their jobs for Reynolds but assert that they did not keep the customer lists after they left Reynolds. *See* Edman aff. ¶13; Ely aff. ¶¶15, 21. Edman acknowledges that he may have emailed customer lists from the Brighton, Massachusetts office to his personal email address but only because he frequently worked from home in the evenings and needed the documents to prepare his sales plans. *See* Edman aff. ¶13. Both Edman and Ely assert that they never received any confidential information of Smooth-On, including formulas for the products it manufactures. *See* Edman aff. ¶14; Ely aff. ¶22.

Edman and Ely assert that Plus Fabrication provides mold making and casting services; that Plus Fabrication's customers are generally from Massachusetts and other northeastern states and are typically referred by Edman's and Ely's contacts in the Boston art community, including their former colleagues at Reynolds; that Edman and Ely have not transacted any business in Pennsylvania except for recent telephone calls and emails with one company based in Pennsylvania that is not a current or former customer of Reynolds; and that those communications pertain to work that will be performed in Massachusetts. *See* Edman aff. ¶¶21, 24-25; Ely aff. ¶¶25, 29-30; Plus aff. ¶¶5, 8. Reynolds denies that Plus Fabrication does not do business in Pennsylvania. *See* answer ¶56.

Reynolds alleges that Edman and Ely had continuous and systematic contact with Bianco and Western in Easton, Pennsylvania with respect to virtually all aspects of Reynolds's business. *See* answer ¶¶29, 32; Bianco aff. ¶¶4, 8-10. Edman acknowledges that he had regular telephone and email contact with Bianco and Western in the Easton office. *See* Edman aff. ¶18. Ely asserts that she exchanged a few emails with Bianco and Western and had a few conversations with Western, one of which took place when he visited the showroom in Brighton, Massachusetts. *See* Ely aff. ¶17.

Reynolds asserts that there are relevant documents at the Easton, Pennsylvania office. *See* Bianco aff. ¶13. Reynolds asserts that it will call additional employees to testify concerning Reynolds's billing, invoicing, computer system, and communication. *See* pl. br. in opposition to def. pet. to dismiss pursuant to 42 Pa.C.S.A. §5322(e) ("pl. br.") at 2-3. Reynolds has not identified any third party witnesses or documents outside of Massachusetts.

## VIII. Defendants' Motion To Dismiss Based on Forum Non Conveniens

On May 14, 2013, defendants filed a "Petition to Dismiss Plaintiffs' Complaint Based on Forum Non Conveniens Pursuant to 42 Pa.C.S.A. §5322(e)." Defendants argue that although Reynolds and Smooth-On have offices in Easton, Pennsylvania, most of the evidence in the case will center on the parties' actions in Massachusetts and that Massachusetts would be a more convenient forum for the litigation. *See* def. br. at 5-7.

## DISCUSSION

## I. Appropriateness of Pennsylvania as a Forum

### A. The Doctrine of Forum Non Conveniens

The doctrine of *forum non conveniens* is codified in Pennsylvania's long-arm statute. *See* 42 Pa.C.S.A. §5322 *et seq.* "When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa.C.S.A. §5322(e); *accord Plum v. Tampax, Inc.*, 160 A.2d 549, 552 (Pa. 1960) ("It is well within the power of the court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses, the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum."). "Because our courts lack authority to transfer cases to the courts of our sister states, dismissal of the action is the only permissible result." *Alford v. Philadelphia Coca-Cola Bottling Co., Inc.*, 531 A.2d 792, 794 (Pa. Super. 1987).

### B. Standard of Review

"The decision to dismiss [based on *forum non conveniens*] is within the trial court's discretion, and will not be reversed where there is no abuse of discretion." *Tyro Indus., Inc. v. James A. Wood, Inc.*, 614 A.2d 279, 281 (Pa. Super. 1992). "It is not enough for an appellant challenging dismissal to persuade the appellate court that it might have reached a different conclusion. If there is any basis for the trial court's decision, the ruling will not be disturbed." *Id.* at 281-82.

## C. Requirements for Dismissal

"In deciding whether to dismiss a suit based on *forum non conveniens*, the court must consider two important factors (1) a plaintiff's choice of the place of suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff." *Jessop v. ACF Indus., LLC*, 859 A.2d 801, 802 (Pa. Super. 2004). Here, all of the parties do business in Massachusetts and are therefore subject to jurisdiction and venue there. It has been only one year since Ely left Reynolds, and Reynolds has raised no concern that any of its claims might be barred by statutes of limitations. Thus, if the court were to dismiss this action on grounds of *forum non conveniens*, Reynolds would have an alternative forum available in Massachusetts. Accordingly, we must now determine whether there are "weighty reasons" sufficient to overcome Reynolds's choice of forum in Pennsylvania.

## D. Factors To Be Considered in Evaluating Plaintiff's Chosen Forum

"In determining whether 'weighty reasons' exist so as to overcome the plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved." *Jessop*, 859 A.2d at 803. The private factors a court must consider include (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance for unwilling witnesses, and the cost of obtaining attendance of willing witnesses; (3) possibility of a view of the premises, if a view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.

*See id.* The public factors a court must consider include (1) administrative difficulty for the court created when "litigation is piled up in congested centers instead of being handled at its origin"; (2) the burden of jury duty, which "ought not to be imposed upon people of a community that has no relation to the litigation"; and (3) the extent to which the court will be required to apply the law of a foreign state. *See id* at 803-04. It is not necessary for the defendant to show that the plaintiff's chosen forum is "oppressive and vexatious to the defendant," the standard for transfers between counties. *See Engstrom*, 855 A.2d at 56 & n.7. The court need only consider the private and public factors and, exercising its discretion, determine the most appropriate forum. *See id.* at 56.

Even where the plaintiff is a resident of Pennsylvania, the plaintiff's choice of a Pennsylvania forum will be overcome if the private and public factors weigh strongly in favor of dismissal. *See Tyro*, 614 A.2d at 281 (although plaintiff construction subcontractor did business in Pennsylvania and construction project at issue had occurred in Pennsylvania, dismissal was proper where none of the parties was incorporated in Pennsylvania, the contracts and breaches thereof had occurred outside Pennsylvania, "virtually all witnesses" resided outside Pennsylvania, foreign state's law applied, and Pennsylvania tax dollars would be spent on a litigation with "only tangential contacts" to Pennsylvania).

E. Application of the Private and Public Factors in the Instant Matter

As more fully set forth below, the court has weighed

the private and public factors in the instant matter and concluded that Pennsylvania is an inconvenient forum. Here, as in *Tyro*, although Reynolds does business in Pennsylvania, Reynolds is not incorporated in Pennsylvania, none of the other parties is a resident of Pennsylvania, the contracts and alleged breaches thereof occurred outside Pennsylvania, virtually all of the significant witnesses reside outside Pennsylvania, and if the matter were litigated here, Pennsylvania tax dollars would be spent on a litigation with only tangential contacts to Pennsylvania.

1. Private Factors

Plaintiff asserts, "Litigation in a Massachusetts forum would be equally inconvenient, if not more so, than litigating in Northampton County, Pennsylvania, because the burden would simply be flipped." Pl. br. at 6. We disagree.

In this matter, there will likely be few witnesses from Pennsylvania other than Bianco, Western, and Moulton. Although Reynolds asserts that it will call additional employees to testify to Reynolds's billing, invoicing, computer system, and communication, such testimony will have only modest impact on the case. The parties' most intense focus will be on Reynolds's allegations that Edman and Ely stole trade secrets and solicited Reynolds's customers and employees. Both sides will likely seek to prove their contentions by calling third party witnesses. If this matter is litigated in Massachusetts, the only witnesses who will need to travel there will be Reynolds's own employees from the Easton office, and Reynolds has

the power to compel them to do so. By contrast, if the matter is litigated in Pennsylvania, there will be third-party witnesses from Massachusetts who will need to travel to Pennsylvania and whom the defendants do not control.

First, both sides will likely seek testimony from Reynolds's current and former employees in the Brighton, Massachusetts office to establish (1) the type of work that was performed there; (2) the type of training that was given to Reynolds's employees; (3) whether Edman and Ely attempted to recruit any of those employees; and (4) whether any of those employees saw evidence that Edman and Ely were planning to start their own business, stealing products from Reynolds, or attempting to misappropriate Reynolds's proprietary information or solicit its customers. Most of these witnesses presumably live and work in Massachusetts.

Second, both sides will likely seek testimony from Edman's and Ely's friends and colleagues in the Boston art community, including witnesses from their educational institutions and other employers, to establish (1) whether Edman and Ely gained their current knowledge and expertise before they went to work for Reynolds or as a result of being trained by Reynolds; and (2) whether Edman and Ely obtained their current customers by seeking referrals from their own contacts or by using Reynolds's customer lists. Ely asserts that she worked for three other employers, Linda Ross Art Studio, Metalwerx, and Artisans Asylum, all of which are in Massachusetts. Although Edman did not identify his previous employers, both Edman and Ely assert that they have had no contact with Pennsylvania other than their brief initial visits to

Reynolds's offices in Easton. Thus, witnesses from their educational institutions and other employers likely will not come from Pennsylvania.

Third, both sides will likely seek testimony from current and former customers of both Reynolds and Plus Fabrication to establish (1) whether customers consider Reynolds and Plus Fabrication to be in the same business; (2) whether customers believe that they could obtain the same services from Reynolds and Plus Fabrication; (3) whether customers saw evidence that Edman and Ely were planning to start their own business while they were still employed by Reynolds; (4) whether Edman and Ely solicited Reynolds's customers; (5) whether Plus Fabrication's current customers were referred by Edman's and Ely's contacts in the Massachusetts art community; (6) whether the services Plus Fabrication provides to its customers were corporate opportunities that could have been presented to Reynolds; (7) whether Edman and Ely stole products from Reynolds and used those products at Plus Fabrication; (8) whether Edman and Ely have recommended that their customers buy products that compete with Smooth-On's products; and (9) whether ideas and projects that Plus Fabrication has implemented for its customers were taken from Reynolds or developed independently. Edman and Ely assert that Plus Fabrication conducts its business in Massachusetts, that its customers generally come from Massachusetts and other northeastern states, and that they have had contact with only one prospective customer based in Pennsylvania. Thus, the majority of these witnesses will likely come from Massachusetts and not from Pennsylvania.

Fourth, both sides will likely seek testimony from competitors of Reynolds and Plus Fabrication to establish (1) whether those competitors consider Reynolds and Plus Fabrication to be in the same business; (2) whether Reynolds's allegedly proprietary information is in fact proprietary or is generally known in the industry; (3) whether the services offered by Plus Fabrication could be performed by Reynolds; and (4) whether Plus Fabrication could perform those services without Reynolds's allegedly proprietary information. Based on the asserted locations of Plus Fabrication's customers, most of the witnesses from competitors of Plus Fabrication and Reynolds will likely come from Massachusetts or other states and not from Pennsylvania.

As the foregoing makes clear, both Reynolds and defendants will likely prove their cases largely through the testimony of third-party witnesses, the vast majority of whom will likely come from Massachusetts, or at least outside Pennsylvania. Even if there is a procedure in Massachusetts that would permit the parties to compel such witnesses to provide testimony for a trial in Pennsylvania, the parties would either be required to pay for the witnesses' travel and hotels or forego the impact of live testimony. The defendants in this case are not corporations or wealthy individuals but people of modest means and sophistication who likely cannot afford the expense of transporting numerous witnesses to Pennsylvania. In addition, the difficulties of scheduling testimony under these circumstances would prolong the litigation and place administrative burdens on the court. Thus, the court finds that the private factors here overwhelmingly favor

dismissal.

## 2. Public Factors

Reynolds asserts that this matter should be litigated in Pennsylvania, because defendants' conduct has impacted the business of both Reynolds and Smooth-On, and the courts of Pennsylvania "have a strong interest in enforcing agreements for the benefit of their business entities." Pl. Br. at 7. We disagree.

First, Smooth-On's residence is irrelevant, because Smooth-On had no agreement with defendants and is not a party to this action.

Second, Reynolds's claim to being a "Pennsylvania business entity" is somewhat attenuated. Reynolds is a Texas corporation with operations in Texas and seven other locations throughout the United States, and its owners reside outside of Pennsylvania. Reynolds's only claim to being a "Pennsylvania business entity" is the presence of one administrative office in Easton. By contrast, Reynolds has a showroom and sales force in Massachusetts and serves numerous customers in that state. In addition, Reynolds entered into contracts with residents of Massachusetts that were executed and performed in that state. Thus, the conduct of both Reynolds and defendants has had a significantly greater impact in Massachusetts than in Pennsylvania.

Third, a party has no absolute right to bring an action in the Pennsylvania courts simply because it does business in Pennsylvania. *See Tyro Indus., Inc. v. James A. Wood, Inc.*, 614 A.2d 279, 281 (Pa. Super. 1992). Reynolds is

in the same position as the plaintiff in *Tyro, i.e.,* it is not incorporated in Pennsylvania but merely does business in Pennsylvania, among other places, and the court in *Tyro* found that such a plaintiff's choice of forum was insufficient to overcome the burden and inconvenience of trying a case in which most of the parties and witnesses were located elsewhere. *See id.*

This case has only a limited connection to Pennsylvania. Due to the number of out-of-state witnesses, hearing the matter in Pennsylvania would result in protracted proceedings. Thus, like the court in *Tyro*, we conclude that maintaining this matter in Pennsylvania would unduly burden the Pennsylvania Court by requiring the expenditure of tax dollars on a case with only "tangential contacts" to Pennsylvania. 614 A.2d at 282.[1]

## II. Effect of the Forum Selection Clause in Ely's Contract

Reynolds argues that Ely's case must be heard in Pennsylvania because she signed an employment contract in which she consented to application of Pennsylvania law and the exclusive jurisdiction of the Pennsylvania courts. *See* pl. br. at 7. We disagree.

A forum selection agreement should be enforced

---

1. In this case, application of foreign law is a neutral factor. Massachusetts law will likely apply to the claims against Edman, because his contract was executed and performed in Massachusetts, and his alleged tortious conduct and theft of trade secrets occurred in Massachusetts. On the other hand, Pennsylvania law may apply to the claims against Ely, because her employment agreement provides for application of Pennsylvania law. As a result, regardless of which state's forum is chosen, the court in that state will likely be required to apply the other state's law to some of the claims before it.

"where such agreement is not unreasonable at the time of litigation." *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 536 (Pa. Super. 1990). "An agreement is unreasonable where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue its cause of action." *Id.* A forum selection agreement will be deemed unreasonable and disregarded where, as here, enforcement would be unduly burdensome and the party seeking to enforce the agreement does business in the forum where the other party is located. *See Morgan Trailer Mfg. Corp. v. Hydraroll, Ltd.*, 759 A.2d 926, 930-31 (Pa. Super. 2000). ("We find it particularly compelling that [the party seeking to enforce the forum selection agreement] now has a division in [the other party's forum] and thus has a local base of operations.").

Here, the court finds that enforcement of the forum selection clause in Ely's employment contract would be unreasonable. First, Ely has had no contacts with Pennsylvania other than one training session and a few telephone calls and emails with principals in the Easton office. Second, as discussed above, it would be unduly burdensome for Ely to transport the evidence and witnesses in this case from Massachusetts to Pennsylvania. Third, Reynolds has a showroom and sales force in Massachusetts, alleges injury that occurred in Massachusetts, and will likely call numerous witnesses from Massachusetts. Thus, under the authorities cited above, it would be unreasonable to allow Reynolds to enforce the forum selection clause in Ely's employment agreement and compel her to litigate this case in Pennsylvania. Indeed, it would appear that

the only reason Reynolds seeks to litigate the matter in Pennsylvania is to increase the burden for Ely.

In addition, the court has already determined that the claims against Edman should be tried in Massachusetts. The evidence against Edman and Ely is essentially the same. If the claims against Ely were tried separately in Pennsylvania, the parties would be required to conduct two essentially identical trials, and there would be a risk of inconsistent verdicts. Avoidance of duplicative and inconsistent proceedings is a valid basis to dismiss an action based on the doctrine of *forum non conveniens*. *See Tyro*, 614 A.2d at 283 ("New York is the only forum where all original parties may participate and avoid a duplicative lawsuit."). Thus, in the interest of judicial efficiency and economy, the court holds that the forum selection clause in Ely's contract should be disregarded and that Reynolds's complaint should be dismissed.

Wherefore, we enter the following:

## ORDER OF COURT

And now, this 1st day of August, 2013, upon consideration of the motion of defendants Katherine Ely ("Ely"), Andrew Edman ("Edman"), and Plus Fabrication, LLC ("Plus Fabrication") (collectively, "defendants") to dismiss the complaint of plaintiff Reynolds Advanced Materials, Inc. ("Reynolds") based on the doctrine of *forum non conveniens* pursuant to 42 Pa.C.S.A. §5322(e) and the briefs and arguments thereon, it is hereby ordered and decreed that defendants' motion is granted, and plaintiffs' complaint is dismissed. Defendants' preliminary objections to the complaint are denied as moot.