MORGAN TRAILER MFG. CO. d/b/a
Morgan Corporation, Appellant,

v.

HYDRAROLL, LTD., Transpotech, Ltd.,
Hydraroll, LLC., William Witwer,
John Moyer, and Tracie Mays, Appel-
lees.

Superior Court of Pennsylvania.

Argued April 25, 2000.

Filed Aug. 8, 2000.

Reargument and Reconsideration
Denied Oct. 12, 2000.

Robert J. Reger, King of Prussia, for appellant.

James M. Lillis, Wyomissing, for Hydraroll and Transpotech, appellees.

S. Whitney Rahman, Reading, for Witwer, Moyer and Mays, appellees.

BEFORE: DEL SOLE, POPOVICH, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Morgan Trailer Manufacturing Company ("Morgan") appeals the order of the court below dismissing its action against all six appellees. We reverse and remand.

¶ 2 The trial court aptly summarized the facts:

Morgan ... is a New Jersey based corporation with its principal place of business at Morgantown, Berks County, Pennsylvania. Morgan is in the business of designing, manufacturing, marketing, selling and servicing truck bodies across the United States, Mexico and Canada. Hydraroll, Ltd., ("Hydraroll") is a British corporation with its principal place of business at Forge House ... Great Britain. Hydraroll was the manufacturer of automated vehicle loading systems and ... ancillary equipment used in the loading and unloading of trailers.

Morgan entered into a contract on March 1, 1983 with Hydraroll, whereby Morgan became the exclusive distributor

of all Hydraroll systems and ancillary equipment in the United States, Caribbean Islands, Puerto Rico, Canada and Mexico ("North American Territory") for a period of five years. On March 1, 1988, the parties signed a second five-year contract for Morgan to be the exclusive distributor of Hydraroll systems and ancillary equipment for the North American [T]erritory. The parties signed another exclusive distributorship agreement dated April 23, 1993, which the parties agreed commenced on March 1, 1993.... Upon expiration of this most recent five-year period, the contract was to continue until either party provided twelve months written notice of the agreement's termination pursuant to clause 2.1 of the contract. Transpotech, Ltd., ("Transpotech") also a British corporation, subsequently purchased the assets and liabilities of Hydraroll and continued to manufacture, market and sell products under the "Hydraroll" brand name.

In July 1999, Steven Turner, Managing Director of Transpotech[,] visited Morgan's facilities to inspect the operation of a division of Morgan known as Advanced Handling Systems or AHS, which was the division of Morgan assigned the responsibility of distributing the Hydraroll products. Upon returning to Great Britain, Turner sent a letter to Morgan's then President Peter Hunt dated July 19, 1999 expressing dissatisfaction with AHS's distribution of Hydraroll's products and provided Hunt with twelve months notice of Hydraroll's intention to terminate the contract as provided by clause 2.1. Termination of the contract was to be effective on July 20, 2000. Turner also informed Hunt of several specific breaches of the contract committed by Morgan and advised if they were not cured within ninety (90) days of the date of the letter, the contract would be terminated "forthwith", on October 18, 1999.

On September 15, 1999, Hydraroll, LLC, a Pennsylvania limited liability corporation, was formed with Steve Turner as the Chief Executive Officer. Morgan alleges that Hydraroll LLC was formed as a business entity to distribute "Hydraroll" name brand products in North America. Also in September 1999, several Morgan and AHS employees resigned to work for Transpotech. On October 20, 1999, Transpotech representatives met with Morgan employees to inspect AHS facilities and personnel. Although disputed by Morgan, Transpotech subsequently decided that the breaches set forth in the July 19, 1999 letter had not been cured or were cured inadequately and by way of letter dated October 28, 1999, Turner informed Hunt that the contract was terminated immediately as of October 18, 1999.

On November 3, 1999, Morgan filed a Complaint in equity and a Petition for Temporary Injunctive Relief alleging that Hydraroll, Transpotech, LLC[ ] (a Pennsylvania limited liability corporation) and the former Morgan and AHS employees hired by Transpotech had breached the contract and engaged in anti-competitive conduct as a result of the breach. On November 3, 1999, the emergency motions[ ] judge denied Morgan's request for a Temporary Restraining Order. The Defendants filed numerous preliminary objections to the Complaint and the Petition for Temporary Injunctive Relief. It soon became apparent that the threshold issue to be decided was this court's subject matter jurisdiction ... [because of a contract provision stating that the contract would be interpreted in accordance with English law and that the parties submitted themselves to the exclusive jurisdiction of the English courts.] Consequently, on November 23, 1999, the court ordered that the issue of jurisdiction be briefed by the parties and scheduled for the next available argument court. By way of order dated December 20, 1999, the court sustained defendants' preliminary objections pursuant to Pa.R.C.P.

1028(a)(5) and dismissed the complaint and Petition for Injunctive Relief for lack of subject matter jurisdiction.

Trial Court Opinion, 2/16/00, at 1–3. This appeal followed.[1]

¶ 3 Morgan raises three issues on appeal:

1. Whether this Court should reverse the Common Pleas Court's decision declining to exercise jurisdiction over Morgan's entire eleven count complaint involving all six Appellees simply because a forum selection clause in a canceled contract between Morgan and two of the Appellees states disputes concerning the sale of Hydraroll products should be litigated in England.

2. Whether this Court should reverse the Common Pleas Court's decision declining to exercise jurisdiction over Morgan's tort claims as alleged in its Complaint against all six Appellees.

3. Whether this Court should reverse the Common Pleas Court's decision declining to grant Morgan a hearing upon its request for a preliminary injunction[.]

Brief of Appellant at 2.

 ¶ 4 Our standard of review is clear:

When reviewing a decision granting preliminary objection in the nature of a demurrer, any doubt should be resolved in favor of overruling the demurrer. Preliminary objections should be sustained only in cases that are clear and free from doubt. The trial court must consider as true all well pleaded facts set forth in the complaint and all reasonable inferences drawn therefrom. If the facts pleaded state a claim for which relief may be granted under any theory of law, then there is sufficient doubt to require rejection of the demurrer.

*Gaston v. Diocese of Allentown,* 712 A.2d 757, 758 (Pa.Super.1998) (citations omitted).

¶ 5 We analyze appellant's first two claims together since they are linked by the forum selection clause in the contract. Appellant claims that the court below erred in dismissing the action after finding that it was without subject matter jurisdiction for all of its claims and that, even if the contract claims must be litigated in England, the tort claims can be litigated in Pennsylvania.

¶ 6 The applicable clause here states: "This Agreement and each contract made between the parties hereunder for the sale of the Products will in all respects be interpreted in accordance with the laws of England and the parties hereby submit themselves to the exclusive jurisdiction of the English Courts." Agreement between Hydraroll Limited and Morgan Corporation, 4/23/93, at 12.[2] Morgan's complaint contained eleven counts: count I for specific performance against Hydraroll and Transpotech; count II against all defendants for tortious interference with employment relationship; count III against all defendants for misappropriation of trade secrets; counts IV, V, and VI against former employees William Witwer, John Moyer and Tracie Mays, respectively, for breach of fiduciary duty; count VII against Hydraroll, Transpotech, and Hydraroll, LLC for tortious interference with Morgan's existing customers; count VIII against all defendants for unfair competition; count IX against all defendants for civil conspiracy; count X against Hydraroll and Transpotech for breach of contract;

1. There was a question at oral argument whether appellees' briefs were timely. We are satisfied that the briefs were indeed timely, and we have given them full consideration.

2. We note that the questions before us involve whether the court erred in enforcing the forum selection portion of the clause. While the trial court apparently believed that the choice of law provision in the contract was valid, see Trial Court Opinion, 2/16/00, at 6 (stating that "we would then be required to apply English law to the case at bar"), we decline to reach this issue because it is not currently before us.

and count XI against all defendants for punitive damages. *See* Complaint, 11/3/99.

¶ 7 First, we turn to the two claims that clearly arise from the contact between Morgan and Hydraroll: count I for specific performance and count X for breach of contract, both against Hydraroll and Transpotech. While "private parties cannot change by contract the rules of jurisdiction or venue," *Central Contracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 209 A.2d 810, 816 (1965), a court "should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Churchill Corp. v. Third Century*, 396 Pa.Super. 314, 578 A.2d 532, 536 (1990) (quoting *Youngdahl*, 209 A.2d at 816). An agreement is unreasonable if "its enforcement would ... seriously impair [the] plaintiff's ability to pursue its cause of action." *Id.* (quoting *Youngdahl*, 209 A.2d at 816); *see also Williams v. Gruntal & Co.*, 447 Pa.Super. 357, 669 A.2d 387, 389 (1995). A clause is not unreasonable if it makes enforcing the agreement merely inconvenient or expensive. *See Churchill Corp.*, 578 A.2d at 536. Here, there is no question that litigating this matter in England would be inconvenient and expensive; we must instead determine whether enforcing this clause will go beyond that to "seriously impair" Morgan's lawsuit.

¶ 8 Morgan points us to *Churchill Corp.* for guidance. In *Churchill Corp.*, this Court held that enforcing a forum selection clause naming a small Missouri town as the forum would seriously impair a business licensed in Pennsylvania because it would be more expensive to defend the action than to pay a default judgment. *See id.* at 532. While the Court found that the agreement could not "do substantial justice because no resolution of the case in Missouri could compensate [the Pennsylvania businesses] for the extraordinary expenses they will incur litigating in a forum to which they have virtually no connections

whatsoever," *id.* at 537, it focused on the fact that the appellant did not receive consideration for the forum selection clause. *See id.* at 536.

¶ 9 Here, Morgan fails to claim that it failed to receive consideration for the clause, though it did summarily state that the clause was "nothing more than boilerplate language" in a previous pleading. Memorandum of Law in Support of Plaintiff's Response to Defendants, William Witwer, John Moyer and Tracie Mays' Preliminary Objections to Plaintiff's Petition for Temporary Injunctive Relief, 12/8/99, at 9. Appellees have repeatedly stated otherwise, however, and continue to claim that the clause was duly bargained for. *See* Brief of Appellees, Hydraroll, Ltd., Transpotech, Ltd. and Hydraroll, LLC ("Brief of Hydraroll") at 10–11, 14; Defendants William Witwer, John Moyer, and Tracie Mays's Supplemental Brief in Support of Their Response in the Form of a Preliminary Objection to Plaintiff's Petition for Temporary Injunctive Relief, 12/17/99, at 7; Supplemental Brief of Defendants Hydraroll, Ltd., Transpotech, Ltd., and Hydraroll, LLC in Support of its Motion to Dismiss the Case Because of Lack of Subject Matter Jurisdiction, 12/20/99, at 5–6. Morgan has not countered appellees' assertions in its brief, and we therefore agree with appellees that the facts of *Churchill Corp.* are inapposite to those before us.

¶ 10 We do find guidance, however, in *Copperweld Steel Co. v. Demag–Mannesmann–Bohler*, 578 F.2d 953 (3d Cir. 1978). While the decisions of the Third Circuit Court of Appeals "are not binding on Pennsylvania courts," we do find them persuasive. *Martin v. Hale Products, Inc.*, 699 A.2d 1283, 1287 (Pa.Super.1997). In *Copperweld Steel Co.*, a company with a plant in Ohio signed a contract with a German company. *See id.* at 955. The contract contained a provision similar to the one in the case at hand, *i.e.*, that any disputes arising from the contract would have to be brought in a German court.

*See id.* at 964. In that case, the court held that the provision was unreasonable because, among other things, all of the records, personnel, and witnesses were in the United States and the German company had a Pennsylvania office. *See id.* at 965. Here, the facts are remarkably similar. The employees in the lawsuit reside in Pennsylvania, Morgan has offices in Pennsylvania, most witnesses reside in the United States, all of Morgan's documentary evidence is in the United States, and Hydraroll, LLC is a Pennsylvania corporation with a place of business in Berks County, Pennsylvania. We find it particularly compelling that Hydraroll/Transpotech now has a Pennsylvania division (Hydraroll, LLC) and thus has a local base of operations. For the above reasons, we hold that enforcing the clause would "seriously impair" Morgan's lawsuit. The clause is thus unreasonable.

■ ¶ 11 Even if the clause would not seriously impair Morgan's contract claims, we would still hold that it would not apply to the remaining, noncontract claims against Hydraroll, Hydraroll LLC, and/or Transpotech. Morgan claims that the court below erred in finding that the claims arose from the contract and were therefore subject to the forum selection clause. While our research did not uncover any relevant Pennsylvania state court cases, our federal courts have addressed this issue occasionally. *See, e.g., John Wyeth & Brother Ltd. v. Cigna Int'l Corp.,* 119 F.3d 1070 (3d Cir.1997); *Crescent Int'l, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943 (3d Cir.1988) (per curiam); *Hensel v. Terra Nova Ins. Co.,* 1997 WL 602747 (E.D.Pa.1997) (mem.). In *Crescent Int'l, Inc.,* the forum selection clause read: " 'any litigation upon any of [its] terms .... shall be maintained' in a state or federal court in Miami, Florida." *Crescent Int'l, Inc.,* 857 F.2d at 944 (omission in original). There, the Third Circuit held that "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims assert-

ed arise out of the contractual relation and implicate the contract's terms." *Id.* In *John Wyeth* the forum selection clause read: "This Agreement shall be governed by and construed in accordance with English law, and the English Courts shall have exclusive jurisdiction in relation to any dispute arising under or out of or in relation to this Agreement." *John Wyeth,* 119 F.3d at 1072. There, the court held that product liability claims were properly litigated in England because of the broad language in the forum selection clause. *See id.* at 1076. Lastly, in *Hensel,* the clause read: "It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters thereon, at the request of the Insured ..., will submit to the jurisdiction of any court of competent jurisdiction within the United States...." *Hensel,* 1997 WL 602747, at *1. The district court held that "[a]lthough [the plaintiff] sued under Pennsylvania tort law, his claim is clearly related to his contractual relationship with the defendants" because his claim involved monies owed, as covered by the clause. *Id.* at *2.

¶ 12 In the case before us, the clause reads: *"This Agreement and each contract made between the parties hereunder for the sale of the Products* will in all respects be interpreted in accordance with the laws of England and the parties hereby submit themselves to the exclusive jurisdiction of the English Courts." Agreement between Hydraroll Limited and Morgan Corporation, 4/23/93, at 12 (emphasis added). The trial court found that all of Morgan's claims arose from or were related to the contract because "[a]bsent the contract, all counts would fail." *See* Trial Court Opinion, 2/16/00, at 6. Taking the clause at face value, however, Morgan's claims against Hydraroll, Hydraroll, LLC, and/or Transpotech for tortious interference with employment relationship, misappropriation of trade secrets, tortious interference with customers, unfair competition, conspiracy, and punitive damages, are all separate from the contract because they do not

involve the sale of products. While Morgan certainly had a contract with appellees, that does not mean that all future relations with appellees are somehow connected to that contract. We thus hold that the trial court erred in enforcing the clause as it pertained to those claims as well.

¶ 13 The trial court also erred regarding Morgan's claims against its former employees. We find guidance from a Third Circuit case here as well. In *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1296 (3d Cir.1996), the court held that a forum selection clause in a contract could be "enforced only by the signatories to those agreements." While here the trial court asserted that the counts against the employees "were based upon [their] knowledge of marketing, sales and service of Hydraroll Products acquired through their relationship with [a division of Morgan] which in turn had been formed to 'exclusively handle all aspects of the contract with Hydraroll,'" *id.*, we do not agree. Nor are we convinced by Hydraroll's claim that "[I]t is the belief of the Corporate Appellees that all Appellees would voluntarily submit to the jurisdiction of the English Courts. If this belief is proven unfounded, Morgan may' [sic] return to this Court to pursue those claims." Brief of Hydraroll at 17. The employees were not parties to the sales contract between Morgan and Hydraroll. Consequently, there is no forum selection clause in their relationship, and it is unfair to invent one in an action not relating to the contract. Therefore, Morgan can bring suit in Pennsylvania against its former employees.

¶ 14 Finally, Morgan argues that the trial court erred in refusing to grant an evidentiary hearing regarding its petition for a temporary injunction. The court denied Morgan's request "[b]ecause [after] we decided we did not have subject matter jurisdiction, there was no need for a hearing on the merits of Morgan's petition." Trial Court Opinion, 2/16/00, at 7.

A trial court has broad discretion to grant or deny a preliminary injunction. When reviewing a trial court's grant or refusal of a preliminary injunction, an appellate court does not inquire into the merits of the controversy, but rather examines only the record to ascertain whether any apparently reasonable grounds existed for the action of the court below. We may reverse if the trial court's ruling amounted to an abuse of discretion of a misapplication of law. *WPNT Inc. v. Secret Communication Inc.*, 443 Pa.Super. 269, 661 A.2d 409, 410 (1995) (citations omitted). Further, while "there is no absolute right to a hearing on a preliminary injunction ... '[o]ur rules and our caselaw clearly indicate that a hearing is the preferred procedure. It is the rare preliminary injunction that can correctly be denied without a hearing.'" *Id.* at 411 (quoting *Bell Fuel Corp. v. Cattolico*, 375 Pa.Super. 238, 544 A.2d 450, 455 (1988)) (emphasis omitted). Here, the court below rested its denial of a hearing on the conclusion that it did not have subject matter jurisdiction. As noted above, that conclusion was erroneous. Therefore, we reverse its order denying a hearing and remand so that it may hold one.

¶ 15 Reversed and remanded. Jurisdiction relinquished.