J. S36041/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FRANK MARANO AND DONALD MARANO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FULTON BANK, N.A. D/B/A FULTON | : | |
| FINANCIAL ADVISORS AND FULTON | : | |
| FINANCIAL ADVISORS, N.A., | : | |
| | : | |
| Appellees | : | No. 3572 EDA 2013 |

Appeal from the Order Entered December 4, 2013
In the Court of Common Pleas of Montgomery County
Civil Division No(s).: 2013-26372

BEFORE: GANTMAN, P.J., JENKINS, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:     **FILED OCTOBER 29, 2014**

Appellants, Frank Marano and Donald Marano, appeal from the order entered in the Montgomery County Court of Common Pleas sustaining the preliminary objections of Appellees, Fulton Bank, N.A., doing business as Fulton Financial Advisors, and Fulton Financial Advisors, N.A. Appellants suggest the trial court erred by enforcing a forum selection clause in the parties' promissory notes and transferring the case from Montgomery County to Lancaster County without considering the Pennsylvania Rules of Civil Procedure. We affirm.

---

[*] Former Justice specially assigned to the Superior Court.

Given the procedural posture, we view the record in Appellants' favor, and set forth the following facts. **See Gall v. Hammer**, 617 A.2d 23, 25-26 (Pa. Super. 1992). Before joining Appellees[1] as financial advisors, Appellants worked for Wachovia Securities, Inc. Appellants' Compl., 8/22/13, at 3. Appellants and Appellees "executed . . . promissory note[s] on December 17, 2008[,] which granted Appellant Donald Marano $1,329,746.00 and Appellant Frank Marano $554,125.00 in consideration of employment with Appellees." Trial Ct. Op., 2/7/14, at 1 (capitalization omitted).[2] According to Appellants, financial advisors typically execute promissory notes with their employers:

> [Appellees] would pay bonuses to [Appellants, who] would conditionally agree to repay the bonuses as set forth in the promissory notes, but [Appellees] would progressively reduce and ultimately eliminate the balance owing on the promissory notes during the course of [Appellants'] employment with [Appellees].

Appellants' Compl. at 7.

The promissory notes contain a forum selection clause:

> <u>Governing Law; Jurisdiction</u>. . . . For the purpose of any suit, action or proceeding arising out of or relating to this Note, [Appellees] and [Appellants] agree that the jurisdiction and venue shall lie only in the Court of

---

[1] We acknowledge the numerous record references to Appellee Fulton Financial Advisors, N.A., only. For the sake of convenience, this Court will use "Appellees" to refer to either one or both of the defendants.

[2] Although dated February 3, 2014, the trial court's opinion was docketed on this date.

> Common Pleas of Lancaster County or the Federal District Court for the Eastern District of Pennsylvania and each of [Appellees] and [Appellants] hereby irrevocably consents and submits to the jurisdiction of such courts. [Appellees] and [Appellants] irrevocably waive any objection which [Appellees] or [Appellants] may now or hereinafter have to the laying of the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such a courts [sic] has been brought in an inconvenient forum.

Ex. C and Ex. D to Appellants' Compl. The promissory notes can be discharged only by a signed, written agreement:

> 12. Miscellaneous
>
> *   *   *
>
> (b) Amendment of Note. This Note may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of any such modification, amendment, discharge or waiver is sought.

*Id.*

After Appellants left Wachovia to join Appellees as financial advisors, Wachovia pursued legal action before the Financial Industry Regulatory Authority ("FINRA") against, *inter alia*, Appellees and Appellant Frank Marano, but not Appellant Donald Marano. Appellants' Compl. at 9. The parties in the FINRA suit settled; the settlement agreement states in relevant part:[3]

---

[3] The Wachovia settlement agreement was filed under seal with this Court, as well as the trial court. The parties, however, referred to or quoted from the settlement agreement in their briefs, which were not filed under seal.

- 3 -

[(6) <u>Releases</u>.]

\* \* \*

(b) Wachovia, on the one hand, and [Appellees], on the other hand, hereby release each other, as well as all of their past, present, and future agents, representatives, shareholders, principals, attorneys, affiliates, parent corporations, subsidiaries, officers, directors, employees, predecessors and successors and heirs, executors and assigns, from any and all legal, equitable or other claims, counterclaims, demands, setoffs, defenses, contracts, accounts, suits, debts, agreements, actions, causes of action, sums of money, reckonings, bonds, bills, specialties, covenants, promises, variances, trespasses, damages, extents, executions, judgments, findings, controversies and disputes, and any past, present or future duties, responsibilities, or obligations, from the beginning of the world to the date hereof, which are now known or unknown and arise out of, or which may, can, or shall arise out of, or which have or ever had arisen out of, or which could have arisen out of, the departure of Frank Marano, Trotta, Cohn, Hoenninger, Reed, Nix, Katz, MacCormack, Petruso, Frick and Hoffman from Wachovia employment and their subsequent hiring and employment at [Appellees], including, without limitation, any and all claims and counterclaims which have been or could have been raised in the FINRA Action, the Gonter Action or elsewhere, including but not limited to any and all claims for injunctive relief, conversion, misappropriation of trade secrets, breach of fiduciary duty, breach of contract, unfair competition, interference with contractual and/or prospective relationships, raiding, and any and all other claims, counterclaims, and/or third-party claims of any kind, which have been, or could have been asserted by any party hereto in any court, arbitration, or other forum involving the subject matter of this Release.

Appellants' Brief at 28-29 (emphases omitted) (quoting paragraph 6(b) of

settlement agreement). Wachovia, Appellees, and Appellant Frank Marano

signed the settlement agreement. Appellant Donald Marano did not sign the settlement agreement, as he was not a party to the FINRA action.

Subsequently, Appellants became dissatisfied with working for Appellees, quit, and began working for Morgan Stanley. Ex. C to Appellees' Prelim. Objections to Appellants' Compl., 9/17/13. On August 22, 2013, Appellants sued the underlying Appellees for fraud, negligent misrepresentation, breach of contract, promissory estoppel, unjust enrichment, and declaratory judgment. Appellants' Compl. at 15-19. The complaint alleged that based upon Appellees' representations, Appellants agreed to leave Wachovia, join Appellees, and execute the promissory notes. *Id.* at 4, 8. Appellants averred that but for Appellees' purported representations, Appellants would not have executed the notes. *Id.* Appellants' complaint extensively discussed the promissory notes and alleged that assuming the notes were valid, Appellees "breached the terms of the promissory notes. . . ." *Id.* at 7-9. Appellants' counts for fraud, negligent misrepresentation, breach of contract, and declaratory judgment each contain a paragraph alleging that Appellees are liable "assuming *arguendo* the promissory notes are valid and otherwise enforceable."[4] *Id.* at

---

[4] For example:

> 63. As set forth above, **assuming *arguendo* that the promissory notes are valid and otherwise enforceable**, [Appellees'] unlawful conduct [deprived Appellants] of their right . . . to have the balance owing, if

16-17, 19. The remaining claims of promissory estoppel[5] and unjust enrichment derive from Appellees' alleged misrepresentations. Appellants' Brief at 25; ***see, e.g.***, Appellants' Compl. at 9, 18 (alleging Appellees breached terms of promissory notes and, *inter alia*, overcharged Appellants thus unjustly enriching Appellees).

On September 17, 2013, Appellees filed preliminary objections pursuant to Pa.R.C.P. 1028(a)(1), referencing the forum selection clause in the promissory notes. On December 9, 2013, the court sustained Appellees' preliminary objections and transferred the case to Lancaster County. On December 11, 2013, Appellants timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. ***See generally*** Pa.R.A.P. 311(c) (stating appeal may be taken as of right from order changing venue).

Appellant raises the following seven issues:

> 1. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections finding that the forum selection clause in the promissory notes requires

---

> any, on the promissory notes fully satisfied, and causing [Appellants] to incur damages in the amount of their liability, if any, in respect to the promissory notes.

Appellants' Compl. at 16 (emphasis added).

[5] "Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." ***Crouse v. Cyclops Indus.***, 745 A.2d 606, 610 (Pa. 2000) (citations omitted).

[Appellants] to file causes of action unrelated to the promissory notes in the Court of Common Pleas for Lancaster County?

2. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections finding that "the allegations in [Appellants'] complaint are directly related to the notes executed by the parties" and that the "notes govern [Appellants'] claims"?

3. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections and depriving [Appellants] of their chosen forum even though [Appellees] regularly conduct business within Montgomery County, thereby making Montgomery County a proper venue under Pa.R.C.P. 1006(b) and 2179?

4. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections finding that "[a]ny argument that the settlement agreement and release executed by the parties on June 10, 2009 released any and all debts which arose out of [Appellants'] employment with [Appellees] and has no venue selections clause is meritless"?

5. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections [by] prematurely finding that the "Release specifically exempts any claims for recovery of any outstanding balances and any and all affirmative claims and defenses that have been or could be asserted by [Appellant] Frank Marano"?

6. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections in prematurely and arguably dismissing [Appellants'] claims for declaratory relief, which were not before the [trial] court, under the settlement agreement and release (containing no forum selection) without allowing [Appellants] the right to discovery?

7. Did the trial court commit reversible error in sustaining [Appellees'] preliminary objections in arguably adjudicating [Appellants'] declaratory judgment claims which were not before the [trial] court?

Appellants' Brief at 5-6 (reordered to facilitate disposition) (footnote and some capitalization omitted).

We summarize Appellants' arguments for their first two issues.[6] Appellants contend that because they sued Appellees for breach of an employment agreement, the forum selection clause in the promissory notes does not apply. Specifically, Appellants claim that each of their counts "arise out of [Appellees'] initial and ongoing failure to comply with the representations [Appellees] made to [Appellants] regarding their employment with Appellees." Appellants' Brief at 26. Appellants thus suggest the subject matter of their complaint—Appellees' failure to comply with their purported representations—falls outside the scope of the promissory notes' forum selection clause. *Id.* In support of their suggestion, Appellants cite *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*,

---

[6] Despite raising seven issues in their brief, Appellants divide their argument into only three parts, thus violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued." *See* Pa.R.A.P. 2119(a). We decline to quash, however. *PHH Mortg. Corp. v. Powell*, ___ A.3d ___, ___, 2014 WL 4437646, *3 (Pa. Super. Sept. 10, 2014) (declining to quash appeal despite numerous violations of appellate briefing rules); *see also Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

759 A.2d 926 (Pa. Super. 2000) ("**Morgan**").[7]  Because Appellants have not satisfied their requisite burden of proof, we discern no basis for relief.

We review "a trial court order sustaining preliminary objections based upon improper venue for an abuse of discretion or legal error."  **Stivason v. Timberline Post & Beam Structures Co.**, 947 A.2d 1279, 1281 (Pa. Super. 2008) (affirming application of contractual forum selection clause).  If venue is based upon the interpretation and application of a forum selection clause in a contract, then we conduct a *de novo* review of the trial court's conclusions of law.  **Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.**, 9 A.3d 1207, 1211 (Pa. Super. 2010) ("**Autochoice**") (affirming grant of preliminary objections based on, *inter alia*, venue lying in Florida because parties agreed to forum selection clause in contract).[8]

With respect to forum selection clauses, the **Autochoice** Court observed:

> The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, **a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation**

---

[7] Appellants also quoted from **Kelly v. Bear Stearns & Co.**, 2001 WL 1807360 (C.C.P. Phila.  Dec. 18, 2001), a trial court decision that is not binding on this Court.  **See Commonwealth v. Phinn**, 761 A.2d 176, 179 (Pa. Super. 2000) (holding trial court decisions are not binding precedent).

[8] The **Autochoice** Court also examined whether the plaintiff's fraud claim was barred by the gist-of-the-action doctrine.  **Autochoice**, 9 A.3d at 1212.

> **shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation**. Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair [the] plaintiff's ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement. Moreover, **the party seeking to obviate the agreement has the burden of proving its unreasonableness.**
>
> *    *    *
>
> In light of these controlling principles from ***Central Contracting*** and prevailing case law, a forum selection clause in a commercial contract between business entities is presumptively valid and will be deemed unenforceable only when: 1) the clause itself was induced by fraud or overreaching; 2) the forum selected in the clause is so unfair or inconvenient that a party, for all practical purposes, will be deprived of an opportunity to be heard; or 3) the clause is found to violate public policy.

*Id.* at 1215 (citations omitted and emphases added) (quoting, *inter alia*, ***Cent. Contracting Co. v. C.E. Youngdahl & Co.***, 209 A.2d 810, 816 (Pa. 1965)).

"[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." ***Steuart v. McChesney***, 444 A.2d 659, 661 (Pa. 1982) (citation omitted). "Arise" is defined as, *inter alia*, "to originate from a specified source." Webster's Third International Dictionary 117 (1971); ***see also Mfrs. Cas. Ins. Co. v. Goodville Mut.***

*Cas. Co.*, 170 A.2d 571, 573 (Pa. 1961) ("*Goodville*") (defining "arising out of" in insurance policy as "causally connected with, not proximately caused by."); *see generally McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967) (holding phrase "arising out of" in insurance policy is unambiguous, "clear and definite"). "Related" is defined as, *inter alia*, "having relationship : connected by reason of an established or discoverable relation." Webster's Third International Dictionary 1916 (1971).

For example, in *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266 (Pa. Super. 2004), our Court construed a contract "requiring that the parties arbitrate '[a]ny controversy or Claim arising out of or related to the Contract.'" *Id.* at 1273. The *Smay* Court held that because the appellees averred "the injury arose from the contract, their . . . claims clearly are subject to arbitration." *Id.*; *accord Elwyn v. DeLuca*, 48 A.3d 457, 463 (Pa. Super. 2012); *Pittsburgh Logistics Sys., Inc. v. Prof'l Transp. & Logistics, Inc.*, 803 A.2d 776, 782 (Pa. Super. 2002).

In *Morgan*, our Court examined the import of an international forum selection clause binding the parties to litigation in England. *Morgan*, 759 A.2d at 927. The *Morgan* Court examined whether litigation in England would "seriously impair" the plaintiff's ability to pursue its contract and tort causes of action. *Id.* at 930; *see Autochoice*, 9 A.3d at 1215. The Court noted that all of the relevant employees resided in Pennsylvania, the plaintiff had offices in Pennsylvania, most witnesses and documentary evidence were

located in the United States, and one of the defendants was also located in Pennsylvania. *Id.* at 931. Accordingly, the panel reversed the trial court's order enforcing the parties' forum selection clause because the plaintiff's ability to pursue its claims in England would be "seriously impair[ed]." *Id.*; *see Autochoice*, 9 A.3d at 1215. The *Morgan* Court also noted that even if the clause did not impair the plaintiff's contract claims, "pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms." *Morgan*, 759 A.2d at 931 (citation omitted).

Instantly, as noted above, the interpretation of the phrase, "For the purpose of any suit, action or proceeding **arising out of** or relating to this Note," is at issue. Ex. C and Ex. D to Appellants' Compl. (emphasis added). "Arising out of" is an unambiguous, clear, and definite phrase. *Cf. McCabe*, 228 A.2d at 903. Any suit "originat[ing] from" the promissory notes or any suit "having [a] relationship" with or "connected by reason of an established or discoverable relation" to the promissory notes would be subject to the forum selection clause. *See* Webster's Third International Dictionary 117, 1916; *see also Goodville*, 170 A.2d at 573. Appellants' complaint alleges that if the promissory notes are "valid and otherwise enforceable," then Appellees are liable and "breached the terms of the promissory notes." Appellants' Compl. at 7-9, 16-17. Because Appellants' claims are premised

on, *inter alia*, the validity and enforceability of the promissory notes, their claims arise from or relate to the promissory notes and "clearly are subject" to the forum selection clause. **See Smay**, 864 A.2d at 1273; **Morgan**, 759 A.2d at 931 (holding non-contract claims deriving from contractual relationship and implicating contract are subject to forum selection clause); **see also** Appellants' Brief at 25.

Appellants also failed to establish the unreasonableness of the forum selection clause. **See Autochoice**, 9 A.3d at 1215; **Morgan**, 759 A.2d at 931. Because Appellants elected not to challenge reasonableness before the trial court, this Court cannot consider it.[9] **See** Pa.R.A.P. 302. Appellants' reliance on **Morgan**, therefore, is inapt. **See Morgan**, 759 A.2d at 930. Accordingly, with respect to Appellants' first two issues, we discern no error of law or abuse of discretion by the trial court. **See Stivason**, 947 A.2d at 1281.

---

[9] Given the relatively short distance between Montgomery and Lancaster Counties, it seems unlikely Appellants' ability to pursue their claims would be impaired, unlike the plaintiff in **Morgan**. We note that in a recent decision applying the doctrine of forum *non conveniens*, our Supreme Court observed that the distance between Philadelphia and Bucks County is "mere[ly] inconvenien[t]," but "as between Philadelphia and counties 100 miles away, simple inconvenience fades in the mirror and we near oppressiveness with every milepost of the turnpike and Schuylkill Expressway." **Bratic v. Rubendall**, ___ A.3d ___ 2014 WL 4064028, *7 (Pa. Aug. 18, 2014). We take judicial notice that the distance between the county seats of Montgomery and Lancaster Counties is sixty-six miles, a distance which seems, at most, a minor inconvenience, but certainly not oppressive.

For their third issue, Appellants suggest Appellees failed to establish Montgomery County was an improper venue under the Rules of Civil Procedure. Appellants claim that because Appellees have offices in Montgomery County, it is a proper venue under Pa.R.C.P. 2179. Appellants state that the trial court erred by giving undue weight to Appellees' contacts in Lancaster County under Pa.R.C.P. 1006(b) and 2179. We hold Appellants are not entitled to relief.

In **Midwest Fin. Acceptance Corp. v. Lopez**, 78 A.3d 614 (Pa. Super. 2013), this Court discussed venue as follows:

> [V]enue is an incident of procedure. It is part of that body of law which bounds and delineates the forum and the manner and mode of enforcing a litigant's rights. It is distinguishable from and is not within the field of law, known as substantive, which recognizes, creates and defines rights and liabilities and causes of action. As a matter of procedure, and not substantive law, venue is considered a personal privilege belonging to the defendant and can be waived by failing to raise an objection to venue in timely filed preliminary objections or waived by written agreement or waived by tacit agreement through participation in the proceedings.

*Id.* at 628 (citations omitted). The principle that venue can be waived is well-settled. **See Cent. Contracting Co.**, 209 A.2d at 816 (holding, "a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." (citations omitted)); **accord Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.**, 134 S. Ct.

568, 581 (2013)[10] (holding "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system" and thus, "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases" (alteration and citations omitted)); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972) (holding contractual forum-selection "clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances").

Instantly, as set forth above, Appellants waived in written agreements—the promissory notes—any objections they had to venue in the Lancaster County Court of Common Pleas:

---

[10] The *Atlantic Marine* Court also made two observations:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . Second, [w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. . . .

*Atl. Marine*, 134 S. Ct. at 581-82. While we recognize "that federal court decisions do not control the determinations of the Superior Court," *NASDAQ OMX PHLX, Inc. v. PennMont Secs.*, 52 A.3d 296, 303 (Pa. Super. 2012), decisions such as *Atl. Marine* remain persuasive authority on questions of state law.

> [Appellees] and [Appellants] irrevocably **waive** any objection which [Appellees] or [Appellants] may now or hereinafter have to the laying of the venue of any such suit, action or proceeding brought in such court and any claim that such suit, action or proceeding brought in such a courts [sic] has been brought in an inconvenient forum.

Ex. C and Ex. D to Appellants' Compl. (emphasis added). Thus, when Appellants agreed to the forum selection clauses, they waived any argument that the trial court failed to adhere to Rules 1006(b) and 2179.[11] **See Lopez**, 78 A.3d at 628; **accord Atl. Marine**, 134 S. Ct. at 581-82; **Bremen**, 407 U.S. at 9. Indeed, the **Autochoice** Court did not even address the applicability of the procedural rules given its ruling that the parties' contractual forum selection clause applied. **See Autochoice**, 9 A.3d at 1215-16.

For their last four issues, Appellants suggest that their claims are outside the scope of the forum selection clause. Appellants refer this Court to the release language within paragraph 6(b) of the Wachovia settlement agreement resolving the FINRA action. Appellants maintain that language negates all debts, including the promissory notes executed by Appellants and Appellees. **See** Appellants' Brief at 30. In other words, Appellants opine the settlement agreement voided the promissory notes executed by Appellants and Appellees. **See id.** at 26 (arguing Appellants are entitled to

---

[11] Appellants apparently presume that when a contractual forum-selection clause exists, courts are nonetheless required to comply with Rules 1006(b) and 2179. Appellants cite no authority for this proposition.

"a ruling that they do not owe [Appellees] any money under the promissory notes because they have been released from all such obligations as a result of the Wachovia Settlement Agreement."), 30 (suggesting Appellees released Appellants from any legal debts).  We hold Appellants are due no relief.

As set forth above, the standard of review is *de novo*.  **Autochoice**, 9 A.3d at 1211.  "[S]ettlement agreements are regarded as contracts and must be considered pursuant to general rules of contract interpretation." **Friia v. Friia**, 780 A.2d 664, 668 (Pa. Super. 2001) (citation omitted).  In ascertaining the meaning of the settlement agreement, we must give effect to the intent of the parties.  **Id.**  The intent of the parties is paramount, and "the court will adopt an interpretation which under the circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished."  **Id.** (quoting **Charles D. Stein Revocable Trust v. Gen. Felt Indus., Inc.**, 749 A.2d 978, 980 (Pa. Super. 2000)).  Where the language of the agreement is plain and unambiguous, the plain meaning of the words is determinative of the parties' intent.  **Id.** (citation omitted).  "A contract is deemed ambiguous if it is reasonably susceptible [to] different constructions and capable of being understood in more than one sense.  Therefore, a contract will be deemed unambiguous if reasonable persons could not differ as to the contract's

interpretation." **Purdy v. Purdy**, 715 A.2d 473, 475 (Pa. Super. 1998) (citation and quotation marks omitted).

Instantly, Appellants have not cited, and we are unaware of, any reference to the record suggesting that Appellants and Appellees considered the Wachovia settlement agreement—which resolved the FINRA action—as **also** voiding any debt Appellants owed to Appellees. Indeed, the settlement agreement is binding as between Wachovia and Appellees only. **See** Settlement Agreement, at ¶ 6(b) (stating release is between "Wachovia, on the one hand, and [Appellees], on the other hand, hereby release each other" and their employees). The language does not release any debts, let alone legal claims, between Appellants, "on the one hand," and Appellees, "on the other hand." **See id.** This interpretation is the most reasonable, probable, and natural given the intent of the settlement agreement to resolve the FINRA action. **See Friia**, 780 A.2d at 668. Conversely, no reasonable person could construe a settlement agreement resolving the FINRA action as also releasing Appellants from their obligation to repay Appellees the balance owed on the promissory notes. **See id.**; **Purdy**, 715 A.2d at 475. Such a construction is not the "most reasonable" construction. **See Friia**, 780 A.2d at 668.

Further, the instant claims arise out of the departure of Appellants from Appellees, and not Wachovia. **See** Ex. C and Ex. D to Appellants' Compl. Moreover, Appellant Donald Marone did not sign the Wachovia

settlement agreement or any other agreement to discharge the note. *See id.* We reject Appellants' interpretation of the settlement agreement and thus agree with the trial court's conclusion that Appellants' claims are subject to the forum selection clause. *See Autochoice*, 9 A.3d at 1211. Accordingly, having discerned no abuse of discretion or error of law, we affirm the order below. *See Stivason*, 947 A.2d at 1281.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2014